Ernest D. HARGIS, d/b/a Paradise Lake, Thelma Harris and Ernest Hargis, d/b/a Paradise Lake, Ronald Gibbs, and Patricia Koch, Appellants (Defendants Below),

v.

UNITED FARM BUREAU MUTUAL INSURANCE COMPANY, Appellee (Plaintiff Below).

No. 1–478A91.

Court of Appeals of Indiana, First District.

April 30, 1979.

1176

George N. Craig, Craig, Craig & Yelton, Brazil, for appellants Ernest D. Hargis and Thelma Harris, d/b/a Paradise Lake.

Luther G. Johnson, Mann, Chaney, Johnson, Hicks & Goodwin, Terre Haute, for appellants Ronald Gibbs and Patricia Koch.

Jerdie D. Lewis, Terre Haute, for appellee; Kenneth C. Miller, Brazil, Lewis & Lewis, Terre Haute, of counsel.

ROBERTSON, Judge.

Ernest and Thelma Hargis, d/b/a Paradise Lake (Hargises), Ronald Gibbs and Patricia Koch appeal an adverse decision in a bench trial rendered in favor of appellee, United Farm Bureau Mutual Insurance Co. (Farm Bureau) in a declaratory judgment action. The trial court found that Farm Bureau had no insurance contract in effect with the Hargises and therefore was under no duty or obligation to appear and defend a tort action brought by Gibbs and Koch against the Hargises.

Three issues are raised on appeal. Gibbs and Koch contend that the trial court abused its discretion in refusing to allow them to amend their answer to include the affirmative defenses of waiver and estoppel. The Hargises, Gibbs and Koch all contend that the trial court decision was contrary to law in regard to the issues of waiver and estoppel and also whether the policy was in effect due to the use of unused advance premium from the previous year towards the premium due.

We affirm.

The facts most favorable to the appellee are that Farm Bureau issued a general liability insurance contract in 1970 to the Hargises for their recreational facility known as Paradise Lake for a period of one year. The policy was reissued each term and this was done, except for a period of sixteen months, until June 25, 1974. The policy in controversy was reissued for the period June 25, 1974, until June 25, 1975.

The insurance contract and billing statement/cancellation notice was sent out from the home office each term directly to the Hargises. Payment could be made to either the home office or to the local agent in Brazil. The policy began with a payment of an "advance premium" or deposit premium, which at the end of the term was readjusted dependent upon figures presented to the insurer by the insured showing how much business had been done in the term. According to the policy, if there was a downward adjustment, the unused portion of the "advanced premium" would be returned to the insured. The insurance company could cancel at will upon ten days' written notice, and the unearned portion of the premium returned to the insured on the date of cancellation or as soon thereafter as practicable.

On May 14, 1974, the policy and a billing statement/cancellation notice was sent to the Hargises for the amount of $221, which stated if not paid by July 8, 1974, cancellation of the policy would result. The Hargises admit they received this statement; however, the premium was not tendered or paid. Normally, copies of these statements are sent to the local agents at the time they are sent to the insured. In this case, no such statement was sent to the Brazil local agent of Farm Bureau.

On July 26, 1974, appellant Ronald Gibbs, a minor, was injured while using the swimming facilities of Paradise Lake. The Hargises notified the Brazil agent of Farm Bureau of the accident soon after it occurred. The Brazil agents, unaware that the policy had been cancelled and not informed of this by the Hargises, reassured

Mrs. Hargis and, along with the regional adjuster (also uninformed), began to investigate and process the claim. Some minor medical bills were paid by Farm Bureau to Patricia Koch, mother of Ronald Gibbs, and Koch was told to purchase some medical equipment in expectation of reimbursement.

The failure to pay the premium was discovered by the regional adjuster in January of 1975, and on January 21, 1975, a letter of non-waiver was read and given to the Hargises by the claims adjuster which stated that the company was continuing investigation while checking the nonpayment of the premium, but did not waive the premium requirement. Gibbs and Koch filed a tort action against Hargises on January 24, 1975, which is still pending.

On February 13, 1975, this action was commenced asking for a declaratory judgment that Farm Bureau was not liable for insurance coverage arising out of the alleged tort, and that it had no duty to defend the Hargises. Gibbs, Koch, and the Hargises were named defendants. After a bench trial, the court found that there was no insurance policy in effect on July 26, 1974, and that there was no waiver and estoppel by Farm Bureau or its agents to give renewed effect to the policy.

On appeal, Gibbs and Koch first contend that the trial court abused its discretion in denying their motion to amend their answer to include the affirmative defenses of estoppel and waiver. Ind. Rules of Procedure, Trial Rule 15(A) provides for leave of the court to allow belated amendments when justice so requires. The grant or denial of leave to amend is a matter within the sound discretion of the trial court and reviewable only for an abuse thereof. *Selvia v. Reitmeyer*, (1973) 156 Ind.App. 203, 295 N.E.2d 869, and authorities cited therein. The trial court did not abuse its discretion in this matter in light of the fact that the trial court did allow the Hargises, parties to the insurance contract, to amend their answer to include these affirmative defenses.[1]

The Hargises, Gibbs and Koch next contend that the trial court decision was contrary to law on two grounds. The Indiana Supreme Court has recently outlined the standard of review in *Bureau of Motor Vehicles v. Pentecostal House of Prayer, Inc.*, (1978) Ind., 380 N.E.2d 1225, 1228:

It is fundamental that in reviewing actions of a trial court, an appellate court can neither weigh the evidence nor determine the credibility of witnesses. *B & T Distributors, Inc. v. Riehle*, (1977) Ind., 366 N.E.2d 178, 180. On appeal, this court looks only to the evidence and reasonable inferences therefrom which tend to support the finding of the trial court. *Gariup v. Stern* (1970), 254 Ind. 563, 261 N.E.2d 578. It is only where the evidence leads to but one conclusion and the trial court has reached the opposite result that the judgment will be disturbed as being contrary to law. *Palmer v. Decker* (1970), 253 Ind. 593, 255 N.E.2d 797.

The first ground upon which the Hargises, Gibbs and Koch contend the decision is contrary to law is that there was waiver and estoppel of the unpaid premium by Farm Bureau with the consequence that the policy remained in force through July 26, 1974.

The terms "waiver" and "estoppel" were defined in *Travelers Insurance Co. v. Eviston*, (1941) 110 Ind.App. 143, 154, 37 N.E.2d 310, 314:

Technically, there is a distinction between "waiver" and "estoppel." A waiver is an intentional relinquishment of a known right and is a voluntary act, while the elements of estoppel are the misleading of a party entitled to rely on the acts or statements in question and a consequent change of position to his detriment. But in the law of insurance, the distinction between "estoppel" and "implied waiver" is not easy to preserve, and, quite commonly, in insurance cases, the courts have found it unnecessary or inadvisable to

---

1. There is some authority that strangers to an insurance contract cannot assert waiver or es-

toppel. 45 C.J.S. *Insurance* § 677, p. 622 (1946).

make a distinction between them and have used the terms interchangeably. The doctrines of "waiver" and "estoppel" extend to practically every ground upon which an insurer may deny liability.

■ Failure to timely pay a premium can be the subject matter of waiver and estoppel. *Majestic Life Ins. Co. v. Tuttle,* (1914) 58 Ind.App. 98, 107 N.E. 22.

■ Under the standard of review outlined above, we cannot state that the evidence leads us to the inescapable conclusion that there was estoppel or waiver in this case.

As to estoppel, the essential element of detrimental reliance is not present here.[2] The Hargises did not change their position because of the acts and conduct of the agents and adjusters. The acts and conduct pointed to by the Hargises occurred after both the cancellation and the accident had occurred. The Hargises lost no defense; they expended no funds and they could hardly be lulled by a false sense of security to not acquire insurance elsewhere to cover an accident which had already occurred.

There was no evidence of express intentional waiver of a known right to treat the policy as lapsed and thus we affirm the trial court's conclusion on this issue.

■ Appellant's essential argument is based on the theory of an implied waiver as evinced by the acts and conduct of the agents in treating the policy as in full force and effect. The evidence shows that the agents had no actual knowledge of the lapse and that they treated the policy as in force for six months after the lapse stated

in the cancellation notice. While we can envision public policy reasons for imputing knowledge of the home office to certain transactions of the unaware agent in the interests of a viable flow of information,[3] we do not think the concept of implied waiver should be extended to fit the evidence in this case. We affirm the trial court's conclusion by noting the following: first, the failure to pay and the cancellation notice itself were never discussed by the agent and the Hargises; second, the Hargises never tendered the premium at any time and there was no discussion of credit or the use of the previous year's unused advance premium, if any, towards the premium due; third, "payment of a premium is of the essence of insurance contracts", 14 J. Appleman, Insurance Laws and Practice, § 7832, (1944) and most, if not all, insureds know that if they fail to pay the premiums, they are no longer insured. Thus, the trial court could conclude, based on all these factors, that the Hargises could not have a "reasonable belief . . . that the company will not insist on a compliance with the policy provisions" based on the acts and conduct of the agents in this case. *Continental Ins. Co. v. Thornburg,* (1966) 141 Ind.App. 554, 559, 219 N.E.2d 450, 453; *Huff v. Travelers Indemnity Co.,* (1977) Ind., 363 N.E.2d 985. And fourth, although the period in which the agent treated the policy as in force was quite long, the Hargises were not injured by it.

■ The Hargises' final contention is that unused advance premiums from the previous year existed and, by the language of the contract and by custom and usage, they should have been applied towards the

2. The facts necessary to establish "equitable estoppel" are (1) a representation or concealment of material facts; (2) the representation must have been made with knowledge of the facts; (3) the party to whom it was made must have been ignorant of the matter; (4) it must have been made with the intention that the other party should act upon it; (5) the other party must have been induced to act upon it. *State ex rel. Crooke v. Lugar,* (1976) Ind.App., 354 N.E.2d 755, 765, citing *Emmco Insurance v. Pashas,* (1968) 140 Ind.App. 544, 224 N.E.2d 314. We need not determine if other elements are missing.

3. Appellants cite authority for the proposition that an agent's actual knowledge can in certain situations be imputed to his principal, but none relating to the opposite situation such as exists here. We note, however, W. Seavey, Handbook of the Law of Agency, § 103 (1964) states as a general principle:

The knowledge of a principal affects a transaction conducted by the agent if, and only if, the principal had reason to know that the knowledge was relevant and he had an opportunity to communicate it to the agent.

premium due in the term in question. The Hargises presented no evidence of an unused advance premium, except that for some of the previous years there had been one. This evidence alone does not force us to the opposite conclusion than that of the trial court. Further, the language of the contract does not provide for the application of the unused premium as suggested by the Hargises. Moreover, the Hargises never furnished the data for determining the amount due, if any, and thus cannot argue there was no effective cancellation. *See*

*Talge Mahogany Co. v. Burrows,* (1924) 82 Ind.App. 253, 143 N.E. 692.

Judgment affirmed.

LYBROOK, P. J., and LOWDERMILK, J., concur.