**Emmlee K. CAMERON, Plaintiff,**

**v.**

**FRANCES SLOCUM BANK & TRUST COMPANY, and State Automobile Insurance Association and Glassley Agency of Whitley, Indiana, and Larry J. Rice, Wabash County Sheriff, Defendants.**

**No. S 85–303.**

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 27, 1986.

Philip A. Clancey, Traverse City, Mich., for plaintiff.

Donald R. Metz, Wabash, Ind., for Frances Slocum Bank.

Mark W. Gray, Indianapolis, Ind., for State Auto. Ins.

Charles W. McNagny, Fort Wayne, Ind., for Glassley Agency of Whitley, Indiana.

## MEMORANDUM AND ORDER

GRANT, Senior District Judge.

This matter comes before the Court on defendants' (Frances Slocum Bank & Trust Company's, State Automobile Insurance Association's and Glassley Agency's) Motions for Summary Judgment[1] and defendant's (Frances Slocum Bank & Trust Company's) Motion for Attorney's Fees. For the reasons set forth below, the Court grants the defendants' motions.

### Facts

Under FED.R.CIV.P. 56(c), summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." FED.R.CIV.P. 56(c). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the facts is necessary." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

In making this determination, the court must draw all inferences from the established or asserted facts in favor of the nonmoving party. *Peoples Outfitting Co. v. General Electric Credit Corp.,* 549 F.2d 42 (7th Cir.1977). However, a party opposing the motion may not rest on the mere allegations of his pleadings or the bare contentions that an issue of fact exists. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392–93, 78 L.Ed.2d 336 (1983). *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See generally,* C. Wright, *Law of Federal Courts,* § 99 (4th ed. 1983); 6 *Moore's Federal Practice,* § 56.15 (2d ed. 1983).

---

1. Frances Slocum Bank & Trust Company originally filed a motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. The Court, by Order dated 29 August 1985, notified the parties that the Court intended to treat the Motion as Motion for Summary Judgment pursuant to Rule 56.

Even if there are some disputed facts, where the undisputed facts are the material facts involved and those facts show one party is entitled to judgment as a matter of law, summary judgment is appropriate. *Egger v. Phillips*, 710 F.2d 292, 296–97 (7th Cir.1983), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). Further, if the court resolves all factual disputes in favor of the non-moving party and still finds summary judgment in favor of the moving party is correct as a matter of law, then the moving party is entitled to summary judgment in his favor. *Id.* at 297. *See also, Bishop v. Wood*, 426 U.S. 341, 348 n. 11, 96 S.Ct. 2074, 2079 n. 11, 48 L.Ed.2d 684 (1976).

*Ezpeleta v. Sisters of Mercy Health Corporation*, 621 F.Supp. 1262, 1265 (N.D.Ind. 1985).

With these principles in mind, the Court, having reviewed the depositions, transcripts and numerous pleadings in the instant case, finds the relevant facts to be as follows:

From 1970 to 1974, plaintiff, Cameron, worked as a licensed real estate broker in Indianapolis, Indiana. Cameron left the real estate profession and began working with her father, Schultz, who manufactured and sold fire trucks and other fire equipment. In 1976, Cameron and Schultz purchased the property at issue in this lawsuit. The two secured a $20,000 mortgage from defendant, Frances Slocum Bank & Trust Company [hereinafter referred to as the Bank], and procured fire insurance thereon from defendant, State Automobile Insurance Association [hereinafter referred to as SAIA], through its agent Mark Glassley, during business as defendant, Glassley Insurance Agency [hereinafter referred to as Glassley Agency]. Schultz moved his fire truck manufacturing business into part of the building on the property, and Indiana Water Company rented part of the building as a pumping station. At the time, Cameron sat on the Board of Directors of her father's company, E.L. Schultz & Company.

The mortgage, executed by Cameron, Schultz and the Bank on December 3, 1976, provided in pertinent part that Cameron and Schultz would pay all taxes, assessments and liens against the property, that Cameron and Schultz would keep the buildings on the property in good repair, and that Cameron and Schultz would maintain fire and extended coverage insurance on the property. The mortgage made Cameron and Schultz responsible for attorney's fees incurred by the Bank to protect its interest in the property. The mortgage allowed the Bank to declare the indebtedness due and collectible and to foreclose on the property if Cameron and Schultz failed to meet any of their obligations under the mortgage.

Cameron and Schultz received insurance coverage which extended from December three of each year to December three of the next year. Their yearly policies described the property as: "one story brick with steel rafters, approved roof, building occupied as a light manufacturer and Indiana Water Co. Pumping Station...." Coverage under the policy became suspended "while a described building, whether intended for occupancy by owner or tenant, is vacated or unoccupied beyond a period of sixty consecutive days...." Cameron kept the policies in her possession.

Before issuing the original policy in 1976, agent Phil Glassley toured the building with Schultz, saw the fire truck and pumping operations, and was told that the Water Company was using the building as a pumping station. When agent Phil Glassley visited the building shortly before Schultz filed bankruptcy in late 1979 or early 1980, Schultz again represented that the Water Company was using the building.

In 1979, Cameron became the sole owner of the property. At that time, the Indiana Water Company still rented part of the building as a pumping station, and Schultz still used part to build his fire trucks. However, in late 1979, the Water Company informed Schultz, in a letter which Cameron later read, that they were vacating the

building, and that they would pay their share of the taxes and insurance premium until they had completely vacated.

Prior to 1981, the Water Company removed its pumping equipment from the building and ceased to make rent, taxes and insurance payments. Also prior to 1981, Schultz's bankruptcy caused him to discontinue his fire truck manufacturing business. Neither the Water Company nor Schultz returned to the building. The Water Company, however, maintained a water tank, an underground reservoir and underground pipes on the remainder of the property.

In December 1980, Cameron failed to pay her insurance premium. Glassley Agency canceled the policy and gave notice to Cameron and the Bank. The Bank contacted Cameron and insisted that she reinstate the insurance on the property immediately or face foreclosure. Cameron contacted Glassley Agency and asked that the policy be rewritten at once. After receiving the premium, agent Phil Glassley filled out an application for insurance on Cameron's property. The application sought insurance from January 15, 1981 to January 15, 1982. The application no longer noted Schultz's fire truck manufacturing business as an occupant of the building because agent Phil Glassley knew of Schultz's bankruptcy. The application listed the Water Company as the only tenant in the building because Schultz had represented that the Water Company was a tenant when agent Phil Glassley visited the building in late 1979 or early 1980. On the application, agent Phil Glassley related, among other things, that the building was in good repair, that the building had been insured under another policy which had been canceled for nonpayment of the premium, that he had visited the risk and that he recommended issuing insurance. An unknown individual signed Cameron's name on the application. The Glassley Agency sent the application to SAIA, and a new policy issued. Cameron never reviewed the application, but did receive the policy which described, as all other policies had, the premises as occupied by Indiana Water Co. Pumping Station. Cameron received similar policies in 1982, 1983 and 1984.

After the Water Company vacated the building, Cameron stored some personal belongings in it. However, she never found a tenant to replace the Water Company. The building gradually fell into disrepair due to vandals and to lack of maintenance. In February 1984, the City of Wabash police informed the City of Wabash Building Commissioner that the building was becoming a safety concern. Upon inspection, the Commissioner found broken doors and windows, overgrown brush and weeds, litter and disrepair. On March 2, the Commissioner contacted Cameron who was living in Traverse City, Michigan. The Commissioner informed Cameron about the condition of the building and asked that something be done about it. Discussions with Cameron proved fruitless. On May 3, 1984, the Commissioner posted signs on the property declaring it to be dangerous and unsafe. Cameron received notice of this action. Further discussion followed in June, but the building and property continued to deteriorate. The fire which caused the damage giving rise to this lawsuit occurred on June 30, 1984.

Because the building had been unoccupied and vacant for more than sixty days, SAIA disclaimed coverage for the fire loss in a July 30, 1984 letter. On August 10, 1984, the Bank began state court foreclosure proceedings against the property because Cameron had failed to make mortgage payments after June 1984, and because the Bank had paid back taxes on the property. Three days later, Cameron filed a sworn statement of proof of loss with SAIA describing the building as occupied by the Water Company. The Bank submitted a proof of loss to SAIA on March 13, 1985. SAIA sent the Bank a check in the amount of $13,975.54 which equaled all sums owed to the Bank by Cameron as of June 30, 1984.

The Bank foreclosed on the property on April 16, 1985. The Bank gave Cameron a

credit reflecting the $13,975.54 received from SAIA. The Sheriff of Wabash County, Indiana, scheduled a sale of the property for June 4, 1985. Cameron filed the instant action on May 29, 1985, seeking a temporary restraining order and an adjudication of the rights and liabilities of the parties.

After a June 3, 1985 hearing, this Court issued a temporary restraining order. The Court heard argument on Cameron's Motion for a Preliminary Injunction on August 1, 1985. The Court denied the motion and dissolved the temporary restraining order on August 30, 1985.

### Analysis

A. Glassley Agency's and SAIA's Motion for Summary Judgment.

SAIA disclaimed coverage for the fire loss because it determined that the building had been unoccupied and vacated for more than sixty days before the fire in violation of the insurance policy. Cameron contends that waiver or estoppel ought to operate to bar SAIA from disclaiming insurance coverage because, in the 1981 application, agent Phil Glassley represented that the building was occupied.

Technically, there is a distinction between "waiver" and "estoppel." A waiver is an intentional relinquishment of a known right and is a voluntary act, while the elements of estoppel are the misleading of a party entitled to rely on the acts or statements in question and a consequent change of position to his detriment. But in the law of insurance, the distinction between "estoppel" and "implied waiver" is not easy to preserve, and, quite commonly, in insurance cases, the courts have found it unnecessary or inadvisable to make a distinction between them and have used the terms interchangeably. The doctrines of "waiver" and "estoppel" extend to practically every ground upon which an insurer may deny liability.

*Hargis v. United Farm Bureau Mutual Insurance Company,* 180 Ind.App. 432, 388 N.E.2d 1175, 1178–79 (1979) (quoting

*Travelers Insurance Co. v. Eviston,* 110 Ind.App. 143, 37 N.E.2d 310, 314 (1941)).

■ In order for waiver to bar SAIA's disclaimer, SAIA or agent Phil Glassley had to have had full and actual knowledge of all the facts surrounding the waived occupancy provision. *State Farm Mut. Automobile Ins. Co. v. Phillips,* 210 Ind. 561, 2 N.E.2d 989, 994 (1936); *Rushville Nat. Bank of Rushville v. State Life Ins. Co.,* 210 Ind. 492, 1 N.E.2d 445, 448 (1936). Adequate consideration must support a waiver. *Bronson v. Northwestern Mutual Life Ins. Co.,* 75 Ind.App. 39, 129 N.E. 636, 640 (1921). In the instant case, no consideration supported the alleged waiver of the occupancy clause. Further, by filling out the application for Cameron, Glassley agency and SAIA obtained only implied or constructive knowledge of the status of the building. *Indiana Ins. Co. v. Hartwell,* 123 Ind. 177, 24 N.E. 100, 105 (1890). Constructive notice does not suffice to invoke the doctrine of waiver. 16B J. Appleman & J. Appleman, *Insurance Law and Practice* § 9086, at 541 (1981). Therefore, waiver does not bar SAIA's disclaimer in the instant case.

■ " 'The term estoppel is broader than that of waiver, and may embrace it within its scope, in certain instances, since an insurer, after waiving certain rights, would be estopped thereafter to insist upon them. The converse is not true, as an estoppel need not be founded upon a waiver.' " *Id.* at § 9081, at 497. When an insurer's agent certifies that he has inspected certain premises and that the premises are occupied, and when the agent recommends that an insurance policy issue, estoppel may bar the insurer from raising the issue of occupancy to void the policy. *See Hoosier Insurance Company v. Ogle,* 150 Ind.App. 590, 276 N.E.2d 876, 880 (1971).

The doctrine of equitable estoppel is called into play when a false representation of material fact is made with actual or constructive knowledge of the true state of the facts. The representation must be made to one who is without knowledge or the reasonable means of

knowing the true facts with the intent that it will be relied upon. The second party must then rely upon such representation to his or her detriment. *Kline v. Kramer* (1979), [179] Ind.App. [592], 386 N.E.2d 982, 987; *Hargis v. United Farm Bureau Mut. Ins. Co.* (1979), [180] Ind. App. [432], 388 N.E.2d 1175, 1179, fn. 2. *Whitaker v. St. Joseph's Hospital,* 415 N.E.2d 737, 744–45 (Ind.App.1981). Estoppel does not operate in situations where there is unwarranted reliance. 16B J. Appleman, *supra* p. 9, § 9088, at 563–65.

In the instant case, Cameron relied upon agent Phil Glassley's representation in the 1981 insurance application which stated that her building was occupied. On March 2, 1984, the Wabash Building Commissioner contacted Cameron and told her that the building had become a safety concern, that vandals had broken its doors and windows and had damaged its inside, and that disrepair and poor maintenance made effective policing impossible. After this conversation, Cameron must have known that the building was neither occupied nor capable of being occupied. Her reliance on agent Phil Glassley's representation ceased to be reasonable and became unwarranted. Therefore, equitable estoppel does not operate in this situation.

For these reasons, the Court grants summary judgment to SAIA and to the Glassley Agency.

**B. The Bank's Motions for Summary Judgment and Attorney's Fees.**

The mortgage governs the relationship between Cameron and the Bank.

As is true in the interpretation of all written agreements, the language of the mortgage and supporting instruments, unless it is ambiguous, represents the intention of the parties and is controlling. *Kimbell Foods, Inc. v. Republic National Bank of Dallas,* (5th Cir.1977) 557 F.2d 491, 496, *aff'd* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711. In the absence of fraud or overreaching, it is these objective, written materials, rather than the parties' subjective understandings, which are controlling. *Id.*

*Merchants National Bank & Trust Company of Indianapolis v. H.L.C. Enterprises, Inc.,* 441 N.E.2d 509, 513 (Ind.App. 1982); *see also First Federal Savings and Loan Association of Gary v. Stone,* 467 N.E.2d 1226, 1233 (Ind.App.1984). Cameron has not alleged fraud or overreaching in the formation of the mortgage. "The interpretation of an integrated written contract which contains no ambiguity is a question of law for the court." *Pearson v. First National Bank of Martinsville,* 408 N.E.2d 166, 170 (Ind.App.1980) (citation omitted).

The parties to a mortgage may enter into an agreement regarding the acquisition of insurance and disposition of insurance proceeds in the event of a loss. *See id.* at 169; *see also First Federal Savings and Loan Association of Gary,* 467 N.E.2d at 1233. The instant mortgage provides: "[t]he Mortgagor expressly agrees ... to keep fire and extended coverage insurance in a reliable company approved by Mortgagee and with proceeds rendered payable to the Mortgagee to the extent of its interest,...." Cameron would place a fiduciary duty upon the Bank to know the status of the building and to review the provisions of the insurance policy. No such duty exists because Cameron specifically contracted to obtain and maintain adequate insurance.

Cameron also states that the Bank had actual knowledge of the status of the building and the provisions of the insurance policy. Cameron bases these allegations upon her beliefs. *See* Deposition of Emmlee K. Cameron at 112–15. "[A] party opposing the motion [for summary judgment] may not rest on the mere allegations of his pleadings or the bare contentions that an issue of fact exists." *Ezpeleta,* 621 F.Supp. at 1265. A party ought to support its allegations with affidavits, Fed.R.Civ.P. 56(e); Cameron has supplied none. This Court, therefore, must find Cameron's conclusory allegations regarding the Bank's knowledge to be inadequate.

The mortgage also provides that "[t]he mortgagor expressly agrees to keep all taxes ... against said property paid ..." and that "mortgagor further agrees that upon failure to pay any ... taxes ... all of said mortgage indebtedness shall at Mortgagee's option, without notice, become due and collectible and this mortgage may then be foreclosed accordingly." In addition to this contractual right to foreclosure, the Bank had a statutory right to foreclosure when Cameron failed to perform any condition of the contract. *See* Ind. Code Ann. § 34–1–53–1 (Burns 1973). When Cameron failed to pay the taxes, the Bank exercised its foreclosure right under the mortgage and under Indiana law. The Court finds Cameron's conclusory allegations of misconduct inadequate to challenge the propriety of these actions. For these reasons, this Court grants summary judgment to the Bank.

Finally, the mortgage provides:

[i]n case the Mortgagee shall become a party to any suit or legal proceedings, relating to the above described property or any part thereof, all costs, expenses and attorney's fees incurred therein by the Mortgagee to protect the lien of this mortgage or any of its rights hereunder, shall, with interest thereon ... become a part of the mortgage debt hereby secured and shall, on demand, be paid by the Mortgagor.

Because the Bank was called upon to protect its interests in the property in the instant action, it may collect its related cost, expenses and attorney's fees upon demand. The Bank has submitted an affidavit listing these amounts, and Cameron has not challenged the figures which total $3,141.55. Because Cameron contracted to pay these charges, the Court grants the Bank's Motion for Attorney Fees and Expenses in the amount of $3,141.55.

### Conclusion

The defendants' Motions for Summary Judgment are GRANTED. The Bank's Motion for Attorney Fees and Expenses is GRANTED. Judgment will be entered accordingly.