Charles S. Gleason, Gleason, Hay & Gleason, Indianapolis, Ind., for defendant, counter-plaintiff-appellant.

Zacarias R. Chacon, Crotty and Hoyne, Chicago, Ill., for plaintiff, counter-defendant-appellee.

Before WOOD, POSNER and MANION, Circuit Judges.

POSNER, Circuit Judge.

This dispute over an insurance policy raises a question of contract interpretation. The plaintiff, Continental Casualty Company, brought this diversity suit against American Color, Inc. and Irish-Kitch and Associates, seeking a declaration that it was not liable to American Color on an insurance policy, because the policy had been cancelled. American Color counterclaimed, seeking the proceeds of the policy, and it also filed a cross-claim against Irish-Kitch. The district court granted summary judgment for Continental Casualty both on its claims and on the counterclaim, and, having thus disposed of the main claims before trial, properly relinquished its ancillary jurisdiction over American Color's cross-claim against Irish-Kitch, a claim between citizens of the same state. *Ameri-*

**CONTINENTAL CASUALTY COMPANY, Plaintiff, Counter-Defendant-Appellee,**

v.

**AMERICAN COLOR, INC., Defendant, Counter-Plaintiff-Appellant.**

No. 86–2618.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1987.

Decided May 4, 1987.

*can Nat'l Bank & Trust Co. v. Bailey,* 750 F.2d 577, 581 (7th Cir.1984). That claim is now being litigated in state court. American Color appeals from the judgment in favor of Continental Casualty. The parties agree that the applicable law is that of Indiana.

The policy provided that the insurance "Company may cancel this policy at any time by mailing to the Insured and to any mortgagee designated in this policy ... at the last address known to the Company or its agent at least a 60 day notice of cancellation." On August 21, 1984, Continental mailed three copies—so the district court found—of a notice of cancellation of a fire insurance policy: one to American Color (the insured), one to a bank that held a mortgage on the insured property, and one to Irish-Kitch, American Color's insurance broker. The bank received the notice the next day but, because the name of the insured was different from the name on the mortgage, did not know what property the notice concerned. Two months later it asked Irish-Kitch about the matter. Irish-Kitch promised to send the bank a copy of the insurance policy; after a month elapsed and the copy had still not arrived, the bank called Irish-Kitch again, on November 20. The president of Irish-Kitch testified in his disposition that his company did not receive the notice of cancellation until November 20. In any event, Irish-Kitch, now thoroughly awake, immediately obtained a binder for a replacement policy from the Great American insurance company. American Color offered testimony that it never received the copy of the notice of cancellation mailed by Continental Casualty, or word of the cancellation from either Irish-Kitch or the bank.

On December 25, premises that were owned by American Color and had been insured by Continental Casualty—in the cancelled policy—for $660,000 burned down. Claiming that the binder was ineffective, Great American refused to pay American Color the proceeds of the policy that Irish-Kitch had tried to obtain. In exchange for American Color's covenant not to sue it, Great American agreed to lend $400,000 to American Color, the loan to be repaid from any proceeds that American Color might obtain from this suit on the policy issued by Continental Casualty or from its suit against Irish-Kitch for alleged negligence in procuring the replacement policy.

Continental Casualty presented sworn testimony and a postal receipt showing that the notice of cancellation, properly addressed to American Color and with sufficient postage, had been deposited in the post office on August 21. American Color's sworn denial that it received the notice creates no issue about whether the notice was mailed, since it is not inconsistent with proper mailing; some items properly stamped, addressed, and deposited simply never arrive. Nor did American Color create such an issue by getting Continental Casualty's employees to concede that they could not testify "with an absolute certainty" that they had put the notice in the proper envelope. Nothing on earth is known with absolute certainty. The late arrival of the copy of the notice that was mailed to Irish-Kitch may seem to raise a question of fact; but since there is no suggestion that the postmark was later than August 21 or the address wrong, the question concerns the efficiency of the United States Postal Service rather than of Continental Casualty. Indeed, the fact that the letter was properly addressed is some evidence that the letter to American Color was also properly addressed. The likeliest explanation of what happened is not that American Color never received the notice, but that it was counting on Irish-Kitch to take care of it—which Irish-Kitch tried to do, though unsuccessfully.

In support of this conjecture we note the odd "coincidence" that Irish-Kitch received its copy of the notice the very day on which the bank, having received no response to its initial inquiry from Irish-Kitch, called Irish-Kitch to find out what was going on. It is likely therefore that Irish-Kitch, like the bank in the first two months after receiving its copy of the notice, had simply failed to follow up on the notice. This was not culpable conduct by the insurance company. A lot is being blamed on the insur-

ance company and the postal service that in all likelihood reflects carelessness or mischance by American Color and Irish-Kitch.

■ In any event, American Color can get no help from cases such as *F & F Construction Co. v. Royal Globe Ins. Co.*, 423 N.E.2d 654, 656 (Ind.App.1981), where there was a genuine issue about whether the notice of cancellation had been mailed. See also *United Farm Bureau Mutual Ins. Co. v. Adams*, 145 Ind.App. 516, 518–22, 251 N.E.2d 696, 698–700 (1969); Annot., *Proof of Mailing by Evidence of Business or Office Custom*, 45 A.L.R.4th 476 (1986). Here there was no such issue. See *Richardson v. Brown*, 443 F.2d 926, 928 (10th Cir.1971).

This brings us to the question whether the contract means what it says: that the act of mailing a notice of cancellation, not of receiving it, starts the 60-day clock. There is no semantic ambiguity, but American Color argues that the contract can't mean what it says. Letters get lost in the mail with distressing frequency; and if the letter contains a notice of cancellation the results can be disastrous. Even if Irish-Kitch had obtained an effective binder from Great American on November 20, American Color still would have been uncovered for a month if the cancellation of Continental Casualty's policy was effective on October 21, the sixty-first day after the notice was mailed. What rational insured would consent to have its insurance cancelled without its knowledge?

In making this argument American Color is really arguing for reformation rather than interpretation of the contract, but in any event the argument must fail. The language is clear, and is not, as American Color argues, in conflict with the provision elsewhere in the contract that "Cancellation of this policy by, or through notice to, the Insured first named shall be cancellation of this policy with respect to every insured," or with similar language in the "mortgage clause." These provisions do not specify the method of giving notice; the language quoted earlier does: it is by timely mailing of a "notice of cancellation."

The only ground for disregarding this clear language would be if no reason could be assigned for it. But the reason is apparent. The insurance company doesn't want to be met with an assertion that the policy was never cancelled because notice was never received, for it can disprove such an assertion only if it requests a return receipt from the Postal Service and keeps track of the receipt. No doubt the additional burden would be slight; but at the same time the probability of the insured's not receiving notice was actually far less than thus far suggested. The contract required that the notice be mailed to the mortgagee as well as the insured. Ordinarily the first thing the mortgagee would do if it received notice that the insurance on the mortgaged premises had been cancelled would be to call up the insured; the mortgagee's failure to do that in this case is one of the chain of mishaps that caused the disaster. The probability that a properly mailed letter would not be delivered to two addressees is (if these mishaps are independent events) the square of the probability that it would not be delivered to one of them; so if the probability that either American Color or the bank would not receive the letter was one in a hundred (which is a high estimate), the probability that both would not receive it was only one in ten thousand (and of course one of them, the bank, did receive the letter). Moreover, although not required by the policy to do so, the insurance company also mailed a copy of the notice of cancellation to Irish-Kitch—and that copy was received, although (supposedly) late. The probability that no one to whom the notice was sent would have received it in time *and* that a fire would occur after the cancellation was effective and before American Color awoke to the problem was infinitesimal. When the minuscule expected cost of a cancellation of which the insured is unaware before it is too late is compared with the costs—in additional record-keeping, in uncertainty as to enforceability, and in litigation expense—of a rule that makes cancellation effective only upon receipt of the notice of cancellation, one is not surprised that the mailing rule has persisted. A final wrinkle

is that the fire occurred after American Color's agent (Irish-Kitch) became aware of the problem. Two of the three letters arrived in time to procure a replacement policy, and Irish-Kitch procured one in good time; if the policy was not effective, it was not because of the mishaps (if any) in the receipt of the letters.

So despite the theoretical possibility that the mailing rule would hurt an insured, it is not surprising that there is almost no case law dealing with the effect of a notice of cancellation that is lost in the mails, though apparently provisions for cancellation by mailing (rather than by receipt) are common in insurance contracts. What case law there is supports the district court's decision. See, e.g., *Farber v. Great American Ins. Co.*, 406 F.2d 1228, 1230 (7th Cir.1969); *State Farm Mutual Automobile Ins. Co. v. Perrin*, 331 F.2d 565, 568 (7th Cir.1964); *Wright v. Grain Dealers Nat'l Mutual Fire Ins. Co.*, 186 F.2d 956, 958, 960 (4th Cir.1950); *Vinnie's Wholesale Fish Market, Inc. v. Canadian Marine Underwriters Ltd.*, 441 F.Supp. 341, 345 (D.Mass.1977).

American Color's argument that the Postal Service was Continental Casualty's agent is correct but irrelevant. Continental Casualty could have retrieved the letter from the mail at any time before it was delivered; that right has nothing to do with the terms of the contract.

■ Last, American Color argues that Continental Casualty is estopped to claim cancellation, because on September 6 Continental mailed a letter to American Color requesting it to correct an unsafe condition on the premises. Probably whoever sent the letter was unaware of the cancellation, although, as Continental Casualty points out, when the letter was sent the policy was still in force because the 60 days hadn't expired. There can be no estoppel, however, because there was no reliance. *Hargis v. United Farm Bureau Mutual Ins. Co.*, 180 Ind.App. 432, 436–37, 388 N.E.2d 1175, 1179 (1979). American Color did not suspect that the policy had been cancelled, and was not looking for a replacement policy; hence the letter did not

cause it to stop looking or otherwise change what it was doing. Moreover, its insurance agent attempted to procure a replacement policy—and would have done no more had American Color found out about the cancellation and asked the agent to do just that. So, if the letter of September 6 had never been sent, American Color would have been in exactly the same position when the fire occurred.

AFFIRMED.