Emmlee K. CAMERON,
Plaintiff-Appellant,

v.

FRANCES SLOCUM BANK & TRUST COMPANY, State Automobile Insurance Association, and Glassley Agency of Whitley, Indiana, Defendants-Appellees.

No. 86–1475.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1986.
Decided July 21, 1987.

James V. McGlone, Stuart & Branigin, Lafayette, Ind., for plaintiff-appellant.

Charles W. McNagny, Barrett & McNagny, Fort Wayne, Ind., Charles R. Tiede, Tiede, Metz & Downs P.C., Wabash, Ind., Mark W. Gray, Kightlinger & Gray, Indianapolis, Ind., for defendants-appellees.

Before WOOD, COFFEY, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Emmlee K. Cameron appeals from an order granting summary judgment in favor of appellees Frances Slocum Bank & Trust Company (the Bank), State Automobile Insurance Association (SAIA), and the Glassley Agency of Whitley, Indiana (Glassley). On the record before us, SAIA and Glassley have failed to show the absence of a genuine issue of material fact. Therefore, we reverse that part of the district court's order granting summary judgment in their favor. Because there is no genuine issue of material fact with respect to Ms. Cameron's claims against the Bank, we affirm that part of the district court's order granting summary judgment in favor of the Bank.

## I

### Facts

Ms. Cameron and her father, Mr. Schultz, purchased a building in Wabash, Indiana in 1976. They insured this building with a policy from SAIA that they obtained through Glassley. At that time, Mr. Schultz used part of the building for his fire truck manufacturing business. The Indiana Cities Water Corporation (Water Company) used another part of the building as a pumping station. Mr. Schultz's business went bankrupt during 1979, and after the summer of 1980, it no longer occupied part of the building. After this bankruptcy, Ms. Cameron became the sole owner of the building. During 1979, the Water Company also notified Mr. Schultz that it would be vacating the building by the end of 1979 or the beginning of 1980.

In December of 1980, Ms. Cameron failed to pay the insurance premium for the building. The Bank, which had a mortgage on the property, received a notice of cancellation from SAIA. The Bank notified Ms. Cameron that, if she did not reinstate the insurance coverage, she would face foreclosure. Ms. Cameron then sent a check for the amount of her usual premium to Glassley. Because the original policy had been cancelled, Glassley treated the check as an application for insurance.

An application was filled out for Ms. Cameron, using the information she had provided in her original application for insurance. However, Mr. Schultz's business was no longer listed as an occupant of the building. Someone other than Ms. Cameron signed her name to the application. Although he stated that he did not know who had signed Ms. Cameron's name to the application, agent Phil Glassley signed the application verifying that the signature on the application was Ms. Cameron's. This application described the building as being occupied by the Water Company as a pumping station. It also stated that Phil Glassley had visited the building and recommended it for insurance. This policy was renewed annually through 1984. The Water Company continued to be listed as an occupant of the building on the face pages to the policies.

On March 2, 1984, the Wabash Building Inspector, Mr. Keith Jolly, notified Ms. Cameron that the building was becoming a safety problem. Apparently, the building had been vandalized and had fallen into a state of disrepair. Mr. Jolly testified that the shrubbery around the building was so overgrown that it almost obscured the

building, that doors and windows were broken or open, that debris was strewn about, both inside and outside the building, and that the building presented a general safety concern. Also, in March 1984, the Bank notified Ms. Cameron that she was in default under her mortgage agreement with the Bank because she had failed to pay past-due real estate taxes. This default made foreclosure a possibility.

On June 30, 1984, the building was destroyed by fire.[1] Ms. Cameron filed a claim with SAIA for the loss. SAIA denied the claim relying upon the exclusion in the policy that applied if the building were vacant or unoccupied for a period of sixty days or more. Ms. Cameron then filed a "sworn statement of proof of loss with SAIA that described the building as being occupied by the Water Company." *Cameron v. Frances Slocum Bank & Trust Co.*, 628 F.Supp. 966, 969 (N.D.Ind.1986) [hereinafter cited as Order].

The bank foreclosed on the property on April 16, 1985. A sheriff's sale was scheduled for June 4, 1985. Ms. Cameron then brought this action in the district court. Jurisdiction was based on diversity of citizenship. She claimed that SAIA had breached its contractual obligation by failing to pay the amount due under the insurance contract on account of the fire. She also claimed that Mr. Glassley was negligent in his handling of her requests for insurance and that, by issuing the insurance with knowledge that the building was vacant and unoccupied, he had waived the

right to rely on that policy exclusion. SAIA is responsible, she contends, for Mr. Glassley's action because of their agency relationship. Finally, Ms. Cameron claimed that the Bank violated a duty it owed her by failing to secure insurance coverage to protect her interest in the building.

Ms. Cameron's challenges to that part of the district court's order in favor of appellees SAIA and Glassley are best considered separately from her challenges to that part of the order in favor of the Bank.

## II

### Cameron v. SAIA and Glassley

■ Ms. Cameron argues that the district court improperly granted summary judgment in favor of appellees SAIA and Glassley because genuine issues of material fact exist as to: 1) whether the building had been vacant or unoccupied for sixty days at the time of the fire; 2) whether SAIA had waived its right to rely on the vacancy/unoccupancy provision; 3) whether SAIA should be estopped from relying on the vacancy/unoccupancy provision; 4) whether agent Glassley was negligent in procuring insurance for appellant; 5) whether SAIA is vicariously liable for Mr. Glassley's negligence; and 6) whether Mr. Glassley's testimony was credible. Because Ms. Cameron's contentions with respect to the waiver claim affect many of her other contentions, we shall focus primarily on that claim.[2]

---

**1.** A Wabash man was arrested and convicted of arson, in an unrelated proceeding, for the fire that damaged appellant's building.

**2.** To the extent that Ms. Cameron's estoppel claim relies upon Phil Glassley's knowledge, its disposition follows from that of the waiver claim. Similarly, the question of Mr. Glassley's negligence involves his knowledge of the building's condition at the time the policy was issued. Of course, the issue of Mr. Glassley's credibility is central to the determination of the waiver issue. Because these three issues are so closely related to the waiver claim, it is unnecessary to treat them separately.

Also related to the waiver issue is appellees' defense relying on a provision of the insurance policy that suspends coverage where the risk is increased by any means within the knowledge or control of the insured. However, the term

"increase" connotes change. To show change, appellees would have been required to present evidence of the condition of the building at the time the policy was issued. *See* 5 J. Appleman & J. Appleman, Insurance Law and Practice, § 2941 at 4–5 (1970). Because no such evidence was presented, this court cannot determine, on this record, whether the risk has, in fact, been increased. Indeed, the answer to this question may depend on Mr. Glassley's knowledge of the condition of the building at the time the policy was issued, *see* 17 J. Appleman & J. Appleman, Insurance Law and Practice, § 9602 at 515–16 (1981), since the fundamental issue is whether the appellees contemplated insuring the risk which incurred the loss.

We find Ms. Cameron's other claims to be without merit. First, Ms. Cameron argues that her building was not vacant or unoccupied. She argues that whether a building is occupied

## A. Ms. Cameron's Waiver Theory

In support of her waiver argument, Ms. Cameron submits that SAIA and Glassley accepted her premiums even though Glassley knew the condition of the building. She contends that they thereby waived the right to rely upon the vacancy/unoccupancy provision.

Under Indiana law, waiver is the "intentional relinquishment of a known right." *Thombleson v. Board of School Trustees,* 492 N.E.2d 327, 333 (Ind.App.1986). To have expressly waived the vacancy/unoccupancy provision, the insurance company must have had actual knowledge that the building was vacant and unoccupied. Furthermore, having that knowledge, the company must have voluntarily and intentionally relinquished its right to rely on that provision. *Rushville Nat'l Bank v. State Life Ins. Co.,* 210 Ind. 492, 1 N.E.2d 445, 448 (1936). Ms. Cameron has the burden of proving waiver. *Ohio Casualty Ins. Co. v. Rynearson,* 507 F.2d 573, 580 (7th Cir. 1974).

## B. Summary Judgment Motion

The standard of review for an order granting a motion for summary judgment is well-established:

A motion for summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An appellate court should reverse a grant of summary judgment upon the showing of a dispute over a material fact, however the plaintiff must "allude to specific facts which raise a genuine issue for trial." *Linhart v. Glatfelter,* 771 F.2d 1004, 1008 (7th Cir.1985). In reviewing a grant of summary judgment, an appellate court must view the record and the inferences drawn therefrom in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

*Illinois v. Bowen,* 808 F.2d 571, 573–74 (7th Cir.1986).

In resisting the motion for summary judgment, Ms. Cameron offered no direct evidence to establish that Glassley knew the building was vacant and unoccupied. Rather, she argued that Mr. Glassley's conduct, as evidenced by the application for insurance and by Mr. Glassley's own deposition, raises a genuine issue of material fact with respect to his knowledge of the building's condition. *See Hargis v. United Farm Bureau Mut. Ins. Co.,* 180 Ind.App.

---

depends upon the type of building. *See Ohio Farmer's Ins. Co. v. Vogel,* 166 Ind. 239, 76 N.E. 977 (1908). She argues that her building was a warehouse, that warehouses are used for storage, that she used her building for storage, and therefore, that her building was not vacant or unoccupied. However, as indicated by *Trustees of Erskine College v. Central Mut. Ins. Co.,* 270 S.C. 118, 241 S.E.2d 160 (1978), a case upon which appellant relies to make this argument, the "contemplated use [for a building] is determined by the terms expressed in the contract." *Id.* at 162. Here, the contract between the parties contemplated that the building would be used as a pumping station by the Water Company, not as a storage facility. There is no evidence that the building was occupied by the Water Company as a pumping station at the time of the fire. Furthermore, appellant's evidence as to the use of the building for storage is hardly sufficient to show occupancy in light of the other evidence offered.

Next appellant argues that the terms vacancy and unoccupancy are ambiguous and that, therefore, the exclusion cannot be enforced. The policy provides: " 'Vacant' or 'Vacancy'

means containing no contents pertaining to operations or activities customary to occupancy of the building. 'Unoccupied' or 'Unoccupancy' means containing contents pertaining to occupancy of the building while operations or other customary activities are suspended." The terms must be read with the contemplated use of the building, as set forth in the policy (a water pumping facility—not a storage facility), in mind. *See Trustees of Erskine College,* 241 S.E.2d at 162. Given the contemplated use of the building, "vacancy" would obviously mean the absence of contents in the building pertaining to *operations* or *activities* customary to a water pumping station. Similarly, "unoccupied" would mean containing contents pertaining to a water pumping station while the water pumping activities are suspended. Thus, under the terms of the policy, the building had been vacant or unoccupied for a period of more than 60 days at the time of the fire. The miscellaneous water pumping equipment apparently left behind by the water company when it ceased operations was clearly not on the property as part of a water pumping operation. It was either abandoned or being stored.

432, 388 N.E.2d 1175, 1179 (1979); *Rushville Nat'l Bank,* 1 N.E.2d at 448. She notes that, on the 1981 insurance application, Mr. Glassley stated that he had visited the building. In his deposition, Mr. Glassley admitted that this question appeared on the form "[s]o the company will know what they are insuring." Dep. of Phil Glassley at 18. He further admitted that his usual practice was to visit the risk at the time of application:

> Q. Can you tell me, please, under the contract, what function you performed with reference to State Automobile Insurance Association?
>
> A. I was allowed to write commercial and personal insurance.
>
> Q. And mechanically, how would that be done, say in the case of commercial insurance? What would you do?
>
> A. What would I do?
>
> Q. Yes.
>
> A. Say someone came in and made an inquiry about coverage. We would go down and look at it and determine the amount they wanted on a building, and contents, and liability, and send the application in, and the company would review it in underwriting, and if everything was all right, they would issue a policy.

*Id.* at 6–7.

Glassley and SAIA counter this argument by noting that the form upon which Ms. Cameron relies contains no provision for stating *when* the risk was visited. They note that Mr. Glassley testified at his deposition that he had visited the building "on prior occasions." *Id.* at 19. Therefore, they argue, Mr. Glassley · testified "without contradiction," that "there was no specific time parameter within which he was required to make an inspection in support of a particular application." SAIA Br. at 24. Summary judgment was proper, they submit, because Ms. Cameron has failed to show a necessary element of her waiver claim—knowledge. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) ("In such a situation, there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial.").

C. Analysis

In assessing the arguments of the parties, we must determine whether there is a "genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Celotex Corp.,* 106 S.Ct. at 2552. Certainly, the fact at issue—Mr. Glassley's knowledge at the time of application—is material. As the Supreme Court said in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), "the substantive law will identify which facts are material." To establish her claim of waiver, Ms. Cameron must show that Phil Glassley had knowledge of the building's condition when the policy was issued.

We must therefore focus on whether a "genuine" issue exists with respect to that material fact. To establish that an issue of fact is "genuine," a party " 'must do more than simply show that there is some metaphysical doubt as to material facts.' *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* [475 U.S. 574] 106 S.Ct. 1348, 1356 [89 L.Ed.2d 538] (1986).... Instead, the nonmoving party must set forth '*specific facts* showing that there is a genuine issue for trial.' Fed.R.Civ.P. 56(e)." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). In our view, such a "genuine" issue does exist. First, Mr. Glassley's statement on the application that he visited the risk, when coupled with his explanation in his deposition as to the purpose of such an inspection, permits the inference that he visited the risk at the time of application. This inference is especially permissible in light of his further statement that a visitation at the time of application was the normal practice. His later and somewhat inconsistent statement that he did not visit the risk at the time of application [3] can be

---

3. The following exchange occurred:
   Q. Now, is there a procedure employed by you, or by State Auto Insurance, as to the timeliness of the inspections to support an application for insurance?
   A. A time?

interpreted as a clarifying explanation or as an equivocation. On summary judgment, all inferences must be resolved in favor of the non-moving party. *Bowen,* 808 F.2d at 573–74.

In determining that a genuine issue of material fact exists, we also note that, on the current record, Mr. Glassley's credibility is a matter of legitimate inquiry. The possible inconsistency with respect to his description of his visitation practice is certainly a matter for legitimate exploration. Moreover, Mr. Glassley's verification of a false signature is additional grounds for impeachment. "Clearly, if the credibility of the movant's witnesses is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied and the case allowed to proceed to trial, inasmuch as this situation presents the type of dispute over a genuine issue of material fact that should be left to the trier of fact." 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2726, at 115–16 (2d ed. 1983).

On summary judgment, a court can neither make a choice between competing inferences nor make a credibility determination. We therefore hold that, as the record now stands, there exists a genuine issue of material fact as to whether the appellees have waived the vacancy/unoccupancy provision. We therefore reverse that part of the district court's order granting summary judgment in favor of appellees SAIA and Glassley.

### III

### Cameron v. the Bank

Ms. Cameron also challenges that part of the district court's order granting summary judgment in favor of the Bank on Ms. Cameron's claim for breach of an assumed duty and on the Bank's claim for attorneys' fees.

### A. Breach of an Assumed Duty

Ms. Cameron argues that the Bank negligently breached an assumed duty to advise her. Her argument consists of three elements: 1) an Indiana case in which the court held that a party could be held liable for negligently breaching a gratuitously assumed duty, *Ember v. B.F.D., Inc.,* 490 N.E.2d 764, 769 (Ind.App.1986); 2) a June 1984 conversation between the Bank's president and Ms. Cameron during which the Bank's president told her that he had an obligation to protect her interests; and 3) the Bank's demand that Ms. Cameron renew the insurance policy when the original policy had lapsed in 1981.

Ms. Cameron argues that the 1984 conversation evidences the Bank's assumption of a duty to protect her interests, a duty which the Bank breached by demanding (in 1981) that she renew an insurance policy which failed to provide proper coverage. There is no evidence from which a trier of fact could reasonably infer that the Bank's president led Ms. Cameron to believe that he would make sure her building was properly insured. Ms. Cameron is simply taking an unrelated conversation that occurred three years after the Bank had demanded renewal of the insurance coverage and trying to show, through that conversation, that the Bank had undertaken a duty to make sure she had properly insured her building. We hold there is no genuine issue of material fact as to whether the bank assumed such a duty.[4]

---

Q. What I am getting at is this. Is there a time parameter within which you should inspect a potential risk to support an application for coverage?

A. I am speaking for myself. State Auto, I don't know about them. There is no time for me.

Dep. of Phil Glassley at 21–22.

4. In a letter to this court dated September 19, 1986, Ms. Cameron also argued that the district court erred by treating the Bank's motion to dismiss as a motion for summary judgment because she did not receive adequate notice. Although this letter is in the form of a citation to additional authority, it is in fact a new argument. Because it was not raised previously, the argument is waived. *See Shlay v. Montgomery,* 802 F.2d 918, 922 n. 2 (7th Cir.1986) (arguments raised for the first time in a party's reply brief are waived). Moreover, even if this argument had been timely raised, it would fail because materials outside the pleadings regarding Ms. Cameron's claim against the Bank were submitted to the court. *See In re G. & A. Books,*

## B. Attorneys' Fees

The mortgage agreement between Ms. Cameron and the Bank provides that appellant shall be liable to the Bank for costs, expenses, and attorneys' fees incurred by the Bank as a result of its participation in any legal proceedings to protect its interest in the property. The district court granted summary judgment to the Bank on its claim for fees and expenses incurred in this litigation. Ms. Cameron argues that the Bank was a participant in this proceeding only because it had to answer her claims against it for negligence. The district court determined that the Bank initiated these proceedings by bringing the foreclosure action, and that the Bank had a right to bring such an action: 1) under the contract because Ms. Cameron had failed to maintain tax payments on the property; and 2) under Indiana law because Ms. Cameron had failed to perform a condition of the mortgage agreement. Order at 13. Ms. Cameron's claims against the Bank did not arise until she sought to enjoin the sheriff's sale after the foreclosure. Because the Bank was only protecting its interest in the property under the mortgage agreement and state law, the granting of the Bank's motion for fees was proper.

### IV

Because as the record now stands, we cannot say that Ms. Cameron raised no genuine issue of material fact with respect to her claims against appellees SAIA and Glassley, we reverse that part of the district court's order granting summary judgment in their favor. We remand that part of the case to the district court for further proceedings. We affirm that part of the district court's order granting summary judgment in favor of appellee Frances Slocum Bank & Trust Company. The Bank may recover costs against Ms. Cameron.

*Inc.,* 770 F.2d 288, 294–95 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986) (submissions of materials outside the pleadings put parties on notice that motion to dismiss may be treated as motion for summary

Ms. Cameron may recover one-half of her costs against Glassley and SAIA.

It Is So Ordered

judgment). Finally, the district court stated that it notified the parties of its intention to treat the motion to dismiss as a motion for summary judgment. *Cameron v. Frances Slocum Bank & Trust Co.,* 628 F.Supp. 966, (N.D.Ind.1986).