In the
United States Court of Appeals
For the Seventh Circuit

No. 98-4252

Ricky Outlaw,

Plaintiff-Appellant,

v.

Herb Newkirk and Cameron Mable,
in his individual capacity,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 97 C 396--Robert L. Miller, Jr., Judge.

Argued February 22, 2001--Decided August 3, 2001


  Before Bauer, Coffey, and Manion, Circuit
Judges.

  Bauer, Circuit Judge.  Ricky Outlaw, an
aptly named prison inmate, appeals the
district court's grant of summary
judgment against him on his pro se claim
of excessive force which he had brought
under 42 U.S.C. sec. 1983. We affirm.

BACKGROUND

  Outlaw is currently an inmate at the
Indiana State Prison in Michigan City,
Indiana. However, the incidents giving
rise to this suit occurred on January 29,
1997, when Outlaw was incarcerated at the
Maximum Control Facility at Westville,
Indiana. On that date, correctional
officer Cameron Mable entered the section
of the prison where Outlaw was housed in
order to deliver to each prisoner a pair
of gray gym shorts. These shorts were
routinely distributed to prisoners
through the cuffport door, which is a
small hatch within the cell door. After
Mable gave the shorts to Outlaw through
the cuffport, Outlaw placed his hand in
the cuffport while holding some garbage,
and Mable closed the cuffport door on
Outlaw's hand. Outlaw filed suit under 42
U.S.C. sec. 1983, claiming that Mable
violated his Eighth Amendment right to be
free from cruel and unusual punishment
(as well as the Indiana law of battery)

by "slam[ming] [his] hand in the cuff-port hatch, causing severe pain, swelling and bruising." The complaint also stated that Outlaw and Mable had had prior conflicts and that Mable had previously harassed Outlaw, and it attempted to state a sec. 1983 claim against Herb Newkirk, the prison superintendent, for taking no action despite being informed of the previous incidents between them.

Because Outlaw moved to proceed in forma pauperis, the district court screened the complaint pursuant to 28 U.S.C. sec. 1915A. The court found that the complaint stated a nonfrivolous claim against Mable, but did not state a claim with respect to any incidents prior to January 29, 1997. The district court also found that the complaint stated a claim for battery under Indiana law, and that both Mable and Newkirk were proper defendants as to that claim.

The defendants then moved for summary judgment. In support of their motion, they submitted the affidavits of Mable and of Anita Miller, a fellow correctional officer who claimed to have been present during the incident. In his affidavit, Mable stated that he delivered the shorts to Outlaw through the cuffport door and that "[a]s the cuffport door was being closed, Offender Outlaw attempted to throw trash through the opening." He stated that he heard Outlaw say, "Take this garbage, you bitch," and that Outlaw's hand was caught in the cuffport door as he attempted to throw his trash through it. Mable's affidavit also asserted that he closed the cuffport door because it is "necessary for the security and integrity of the prison" that the cuffport doors be closed, and that he did not know that Outlaw intended to put his hand through the opening when he closed the door. Mable contended that the incident was an accident and that he did not intend to harm Outlaw. Alternatively, he maintained that even if the incident had not been purely accidental, it would have been justified. In support of this, Mable averred the following in his affidavit:

In a maximum security prison such as the Maximum Control Facility, offenders often throw garbage, feces, urine and other injurious matter through the cuffport openings at the correctional officers.

Offenders have even on occasion tried to attack or grab an officer through the cuffport opening. These are considered acts of rebellion and aggression, and employees and inmates can be injured as a result. Based on the routine and custom of the Maximum Control Facility, it is my understanding that closing the cuffport door is considered a reasonable response to this threat. Therefore, even if it were not purely accidental, I believe it would have been a reasonable response to close the cuffport door to prevent Offender Outlaw from injuring myself or anyone else.

Officer Miller's affidavit related an account of the incident which echoed Mable's in several respects. Miller stated that she heard Outlaw say, "Take this garbage, you bitch" as the cuffport door was being closed, that inmates at the facility frequently attempt to throw harmful matter and occasionally try to grab the correctional officers through the cuffport, and that "based upon the routine and custom of the Maximum Control Facility, closing the cuffport door is considered a reasonable response to this threat." Miller also stated: "based on my personal observations and the information given to me at the time, I have no reason to believe that [Mable's] decision to close the cuffport door stemmed from anything other than a good faith effort to maintain the security of the prison." However, she did not explicitly claim to have personally observed Outlaw attempting to throw trash through the cuffport, stating merely that "it is my understanding that as the cuffport door was being closed, Offender Outlaw attempted to throw trash through the opening," and that his hand was caught in the cuffport door as he attempted to throw trash through it. (Emphasis added).

In opposition to defendants' motion, Outlaw filed a memorandum to which he attached various supporting materials as exhibits. Between the memorandum and the exhibits, Outlaw included a notarized document with the heading "Affidavit," which reads: "I, Ricky Outlaw, hereby state and affirm under the penalties for perjury that the following exhibits attached herewith, are true and correct in their stated and represented form."/1 In his memorandum, Outlaw claimed that prior to the cuffport

incident, he and Mable had a disagreement over the exchanging of linens, and as support for this claim he included as an exhibit the grievance that he had filed with the prison authorities recounting this incident. He also produced his grievance with respect to the January 29, 1997 incident, which stated that while Mable was delivering linens, he (Outlaw) had "attempt[ed] to place 2-[S]tyrofoam drinking cups and an ice-cream cup on the food hatch to be thrown away from the last meal," and that "[w]hile placing the item[s] on the hatch Mable slam[m]ed the hatch on my hand. . . ." Among other exhibits, Outlaw also produced Mable's response to one of Outlaw's prior grievances in which Mable confirmed that relations between he and Outlaw were strained.

Moreover, Outlaw denied that he was attempting to throw trash through the cuffport when Mable shut the door on his hand. In support of this assertion, Outlaw submitted as an exhibit Mable's incident report, which had been prepared immediately after the event, noting that the report did not state that Outlaw had attempted to throw trash. The report stated that: "As I was closing the cuffport, Offender Outlaw shoved his hand through the cuffport (with some garbage in his hand) stopping me from the contin ued closing of the cuffport and said, 'Take this garbage you Bitch.'" In his memorandum, Outlaw contended that no facts would support the claim that he attempted to throw trash through the cuffport, and he further stated that he had never thrown anything through the cuffport and that Mable's alleged fear of an imminent attack was unwarranted.

In granting the defendants' summary judgment motion, the court noted that because the defendants had supported their motion with sworn affidavits, and because the motion concerned as issue on which Outlaw would bear the burden of proof at trial, in order to survive summary judgment Outlaw was obligated to go beyond the pleadings and allege specific facts demonstrating a genuine issue for trial through his own affidavits, depositions, answers to interrogatories, or admissions on file. The court found that neither of the "affidavits" submitted by Outlaw accomplished this. It noted that one

affidavit merely addressed a procedural legal issue (by swearing that Outlaw submitted a Notice of Tort claim "to counselo[r] Wilson . . . for mailing to the Indiana Attorney General Office"), while the other affidavit (in which Outlaw "affirms under the penalties for perjury that the following exhibits attached herewith are true and correct in their stated and represented form"), merely certified the exhibits rather than swearing to the truth of their content. The court also ruled that none of Outlaw's supporting materials "cast any light on whether Mr. Outlaw threw trash at Officer Mable or handed it to him, or whether Officer Mable was justified in slamming the cuffport door on Mr. Outlaw's hand." The court reviewed Outlaw's exhibits and found that the only one which addressed these central issues of the case was Mable's response to Outlaw's grievance regarding the January 29, 1997 incident. However, while it noted in passing that Mable's response to Outlaw's grievance was "not necessarily consistent" with his affidavit (since it did not state that Outlaw had attempted to "throw" trash through the cuffport), the court found that this "apparent inconsistency" did not constitute probative evidence that Mable intentionally slammed the cuffport door on Outlaw's hand without justification, and therefore was not sufficient to forestall summary judgment. Having dismissed Outlaw's only federal claim, the court refused to exercise supplemental jurisdiction over his remaining state law claim. Outlaw appealed.

DISCUSSION

We review a district court's grant of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the nonmovant. Summary judgment is warranted only if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the nonmoving

party's favor.

The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court-- that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" Logan, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." Id. (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" Logan, 96 F.3d at 978 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The substantive law that guides our review in this case is that governing

claims of excessive force under the Eighth Amendment. The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits the "unnecessary and wanton infliction of pain" on prisoners. See Hudson v. McMillian, 503 U.S. 1, 5 (1992); Estelle v. Gamble, 429 U.S. 97, 102-03 (1976). In cases involving the claimed use of excessive force, "the core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7 (citation omitted). In conducting this inquiry, a court must examine a variety of factors, including "the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." DeWalt v. Carter, 224 F.3d 607, 619 (7th Cir. 2000) (citing Hudson, 503 U.S. at 7). With regard to the last of these factors, while a plaintiff need not demonstrate a significant injury to state a claim for excessive force under the Eighth Amendment, "a claim ordinarily cannot be predicated on a de minimis use of physical force." DeWalt, 224 F.3d at 620 (citing Hudson, 503 U.S. at 9-10). Indeed, "the Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (citation and internal quotations omitted). Therefore, not every "malevolent touch by a prison guard" gives rise to a federal cause of action, even if the use of force in question "may later seem unnecessary in the peace of a judge's chambers." Id. at 9 (citation and quotation omitted).

Outlaw argues that the defendants failed to meet their initial burden of production, and therefore that the burden of setting forth specific facts demonstrating a genuine issue of material fact never shifted to him. Outlaw notes that the defendants moved for summary judgment on the theory that Outlaw could not establish that Mable slammed the cuffport door on Outlaw's hand with the malicious

intent to harm him. While the defendants did not dispute that Mable closed the cuffport door on Outlaw's hand, they claimed that the action was either accidental or justifiable. Outlaw asserts that the only competent evidence that the defendants offered in support of this theory was Mable's affidavit because Miller's affidavit was not based on personal observation of the incident. Moreover, Outlaw maintains that he produced admissible documentary evidence which presented specific reasons to challenge Mable's credibility, thereby creating a genuine issue of material fact. In his affidavit, Mable stated that Outlaw was attempting to throw trash through the cuffport just as Mable was closing the cuffport door. However, Outlaw produced Mable's contemporaneously-prepared incident report, which did not reference Outlaw's attempting to throw trash. Outlaw contends that it would be reasonable to expect that this important fact would have been included in the incident report, especially considering Mable's subsequent claim that such behavior by prisoners represents a security concern. Relying on Cameron v. Frances Slocum Bank & Trust Co., Outlaw asserts that the contradiction between the incident report and the affidavit raised an issue as to Mable's credibility sufficient to require a trial: (". . . if the credibility of movant's witnesses is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied and the case allowed to proceed to trial, inasmuch as this situation presents the type of dispute over a genuine issue of material fact that should be left to the trier of fact." 824 F.2d 570, 575 (7th Cir. 1987) (quotation and citation omitted)).

We disagree. As the Advisory Committee Notes to Fed. R. Civ. P. 56(e) indicate, issues of credibility defeat summary judgment only "[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility" (emphasis added). See Advisory Committee Notes, 1963 Amendment to Fed. R. Civ. P. 56(e); see also Schoonejongen v.-Curtiss-Wright Corp., 143 F.3d 120, 130 (3d Cir. 1998). Such is not the case here, for the defendants would be entitled to summary judgment even assuming the truth of

Outlaw's version of the incident. It is undisputed that prisoners at the maximum control facility occasionally attempted to throw garbage or other deleterious materials and to grab the guards through the cuffport openings. It is also undisputed that such activities could present a hazard to both guards and inmates. Outlaw presented no evidence contesting Mable's sworn claim that he said "Take this garbage, you bitch," as Mable was closing the cuffport door./2 Finally, although Outlaw's complaint alleges that the cuffport incident caused him "severe pain, swelling, and bruising," one of Outlaw's own submissions forces the conclusion that the injury was in fact quite minor. Prison Nurse Colleen Collins examined Outlaw's hand after the incident, and in her incident report (which Outlaw submitted as an exhibit to his memorandum) she wrote the following:

Slight swelling noted to outer aspect of offender's hand. A small area of decoloration noted to outer part ofoffender's right hand. Area tender when touched by writer. Offender also complained of not being able to move his last two finders on his right hand. Capillary refill brisk, [s]kin warm to dry. No deformities noted to right hand or fingers. Offender voiced no complaints of pain when writer moved fingers on [o]ffender's right hand. Ace wrap applied. OTC Motrin given for pain. Ice pack given. Offender instructed to elevate right hand.

This was the only account of the injury that Outlaw presented in his evidentiary materials.

   Given all of this evidence, Outlaw cannot escape summary judgment even if his own account of the incident is accepted as true (that is, even if he was merely attempting to "place" rather than to "throw" the garbage through the cuffport when Mable closed the door on his hand). As we have noted, Eighth Amendment claims based on de minimis uses of physical force by prison guards are not cognizable unless they involve "force that is repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10. All of the evidence adduced in this case suggests that Mable had a legitimate security reason to close the cuffport

door, whether Outlaw was actually attempting to throw the garbage or merely holding it through the cuffport while uttering hostile words, and that in closing the door Mable applied only enough force to cause superficial injuries to Outlaw's hand. Even viewing the facts in a light most favorable to Outlaw, a rational jury could draw one of only two possible conclusions: that the incident was an accident, or that Mable deliberately and perhaps unnecessarily applied a relatively minor amount of force to achieve a legitimate securityobjective. Neither scenario would involve a use of force that was "repugnant to the conscience of mankind."

Moreover, the minor nature of Outlaw's injuries strongly suggests that the force applied by Mable was de minimis. See DeWalt, 224 F.3d at 620 (upholding the dismissal of plaintiff-inmate's claim that a correctional officer used excessive force when he shoved the plaintiff into a door frame, where the shove was "a single and isolated act, unaccompanied by further uses of force," and where the bruising suffered by the plaintiff did "not appear to have been particularly serious"); Lunsford v. Bennett, 17 F.3d 1574, 1582 (7th Cir. 1994) (upholding grant of summary judgment against a plaintiff-inmate on his Eighth Amendment excessive force claim, and holding that a prison guard applied only de minimis physical force that "[did] not offend the conscience" when he poured a bucket of water on a prisoner and caused the bucket to hit him on the head, thereby causing the plaintiff to suffer daily headaches that did not prevent him from working). While a plaintiff need not demonstrate a significant injury to state a claim for excessive force under the Eighth Amendment, "the degree of injury is relevant to determining whether the use of force could plausibly have been thought necessary in a particular situation," Lunsford, 17 F.3d at 1582 (citation and internal quotation omitted), and a minor injury supports the conclusion that the incident was "at most . . . a de minimis use of force not intended to cause pain or injury to the inmate." Id. Outlaw's evidence does not suggest that his injury was more than minor, nor does it identify any other fact sufficient to raise a genuine issue

on the question of whether Mable shut the cuffport door "maliciously and sadistically for the very purpose of causing harm." This distinguishes Outlaw's case from cases wherein courts have held that a plaintiff has stated a cognizable claim of excessive force under the Eighth Amendment. See Hudson, 503 U.S. at 10 (ruling that correctional officers applied more than de minimis force when they punched and kicked an inmate while holding him in place, causing bruises, swelling, loosened teeth, and a cracked dental plate); Thomas v. Stalter, 20 F.3d 298, 302 (7th Cir. 1994) (holding that jurors could reasonably conclude that the defendant prison guard acted maliciously and sadistically to cause harm--and therefore that the plaintiff-inmate made out a prima facie case of excessive force-- where the plaintiff claimed that the guard punched him in the mouth with a clenched fist while he was being held immobilized by at least nine other people, and told the inmate to "shut up" immediately afterwards). Given the circumstances presented here, even if we were to find Mable's action to be an unnecessary application of force, the minor nature of the injury coupled with the absence of any other indicia of malice on Mable's part would force us to conclude that it does not rise to the level of a constitutional violation. See Lunsford, 17 F.3d at 1582. While Outlaw did submit evidence that there had been prior conflicts between him and Mable and that relations between the two were strained, this does not constitute evidence that Mable used force on the occasion in question maliciously with the intent to cause harm. The Supreme Court has not included the history of (non-violent) conflict between an inmate and a guard among the factors that should be considered in determining whether a guard's use of force on a given occasion is malicious or unjustified.

Therefore, it is not the case that the resolution of any material fact issue hinges on an assessment of Mable's credibility. The question of whether Outlaw was actually attempting to throw garbage (which is the only point on which Mable's statements could possibly be seen as being inconsistent) is not a material dispute for summary judgment purposes, since the resolution of this dispute is

not outcome-determinative under the governing Eighth Amendment substantive law. See generally Anderson, 477 U.S. at 248. Hence, even if Mable's affidavit's claim that Outlaw attempted to throw trash is assumed to be an equivocation or a change of his story rather than merely a clarifying explanation or elaboration, it would not bear on a material issue in dispute and therefore would not defeat the defendants' summary judgment motion. See Capital Options Investments, Inc. v. Goldberg Bros. Commodities, Inc., 958 F.2d 186, 191 (7th Cir. 1992). This distinguishes Outlaw's case from Cameron, wherein the movant's witness made statements in a key document as well as in his deposition which could be interpreted as contradicting another statement in his deposition, and where the contradictory statements concerned a vital material issue. See Cameron, 824 F.3d at 574. Conversely, here the conflicts between the two accounts of the incident which Mable provided would at most be "fodder for impeachment if th[e] case went to trial." See Dugan v. Smerwick Sewerage Co., 142 F.3d 398, 406 (7th Cir. 1998). The mere prospect of challenging a witness's credibility in this manner is not enough, standing alone, to avoid summary judgment. See id.; cf. Fife v. Harmon, 171 F.3d 1173, 1176 (8th Cir. 1999) (ruling that when the credibility of the parties to a summary judgment motion is in doubt, "the fact questions must be tried unless one side is clearly entitled to judgment as a matter of law") (emphasis added). In this case, despite Mable's arguably inconsistent testimony regarding Outlaw's attempting to throw garbage and the resulting fact dispute over that issue, "the record as a whole points in one direction and the dispute is not 'genuine.'" Schoonejongen, 143 F.3d at 130 (citing Matsushita, 475 U.S. at 586).

Therefore, we find that the defendants met their initial burden of production in moving for summary judgment. They submitted affidavits which represented that prisoners throwing matter or grabbing guards through the cuffports is a security threat and that the cuffport doors need to be closed to minimize these hazards. The affidavits also stated that Outlaw said "Take this garbage, you bitch" while holding garbage through the cuffport. Finally, in their memorandum in

support of their summary judgment motion, the defendants pointed to the minor nature of Outlaw's injuries and argued that such an injury could not support an inference of malice. The burden then shifted to Outlaw to present specific evidence that would demonstrate a genuine and material issue for trial. To do this, Outlaw need to present evidence suggesting that the incident was neither accidental nor justified, and that Mable applied more than de minimis physical force. Outlaw has failed to carry his burden. He has not presented any direct evidence that would support a jury finding that Mable acted maliciously with the intent to cause harm, nor does the record support any reasonable inference to that effect, whether through circumstantial evidence or otherwise. Moreover, one of his own evidentiary submissions suggests that Mable applied only de minimis force. Under these circumstances, Outlaw's bald credibility questions are not enough to prevent the entry of summary judgment against him. As we have said, "[s]ummary judgment is intended to avoid a useless trial and is appropriate . . . where it is quite clear what the truth is." Babrocky v. Jewel Food Co. & Retail Meatcutters Union, Local 320, 773 F.2d 857, 861 (7th Cir. 1985).

One final matter bears mentioning. Outlaw brought his complaint pro se, and he argues that neither the defendants nor the district court adequately warned him concerning the need to respond to a summary judgment motion by affidavits, as required by Lewis v. Faulkner, 689 F.2d 100 (7th Cir. 1982). Because we have held that the evidentiary materials that Outlaw submitted were insufficient toprevent summary judgment as a substantive matter, (and have not excluded any of Outlaw's materials from consideration on the ground that they did not qualify as affidavits or were improperly verified or authenticated), and because Outlaw does not identify any other evidence that he would have presented had he received proper Lewis warnings, any deficiency in the Lewis warnings that he received would be harmless. See Kincaid v. Vail, 969 F.2d 594, 599-600 (7th Cir. 1992) (affirming a grant of summary judgment against pro se plaintiff-inmates where "even in light of the materials the plaintiffs would have

had the district court consider, summary judgment was appropriate"); Timms v. Frank, 953 F.2d 281, 286 (7th Cir. 1992) (". . . [I]f [the plaintiff] could not have avoided summary judgment if she had received adequate notice [of the consequences of failing to respond properly to a summary judgment motion], there would be no point in remanding."). Moreover, even if this were not the case, Outlaw's Lewis argument would be unavailing. We have examined the Lewis warnings provided by the defendants in their summary judgment motion, and we find that they clearly and adequately apprised Outlaw of the consequences of failing to respond to the motion with affidavits, thereby satisfying the requirements of Lewis.

CONCLUSION

We have considered Outlaw's other arguments, and find them meritless. We AFFIRM the district court's grant of summary judgment to the defendants.

FOOTNOTES

/1 The defendants argue that this "affidavit" did not attest to the truth of the information contained in the exhibits, but rather merely verified the accuracy of the copies. Therefore, defendants contend that the majority of Outlaw's exhibits are unsworn and unverified, and cannot be considered as evidence for summary judgment purposes. Because we find that Outlaw's evidence, even if accepted, fails to raise a genuine issue of material fact for trial, we assume throughout this opinion that Outlaw's exhibits were properly verified.

/2 Miller's affidavit arguably bolsters Mable's on this point because it seems to be based on personal knowledge: ("I heard Offender Outlaw say, 'Take this garbage, you bitch.'"). Further, it should be noted that although Outlaw denies having said these words in his memorandum in opposition to defendants' motion for summary judgment, none of his affidavits or supporting materials support his denial. Therefore, for summary judgment purposes, Outlaw has presented no evidence to create a genuine issue of material fact on this issue. See Scherer v. Rockwell Int'l Corp., 975 F.2d 356, 361 (7th Cir. 1992) (ruling that "[a]rgument is not evidence upon which to base a denial of summary judgment").