John L. DYE, Jr., Plaintiff–Appellant,

v.

Officer LOMEN, Officer Ancil, and Officer Reilley, Defendants–Appellees.

No. 01–3766.

United States Court of Appeals, Seventh Circuit.

Submitted June 26, 2002 *.

Decided July 16, 2002.

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before BAUER, RIPPLE, MANION, Circuit Judges.

## ORDER

John L. Dye sued various employees of the Wisconsin Department of Corrections under 42 U.S.C. § 1983, alleging that they had subjected him to cruel and unusual punishment in violation of the Eighth Amendment by using excessive force against him during two entries into his cell, by refusing to provide him with toilet paper for several days, by denying him adequate medical attention and by strip-searching him in front of female employees. The district court granted summary judgment to the defendants, and Mr. Dye appeals. We affirm.

At the time of the incidents leading to this lawsuit, Mr. Dye was incarcerated at the Kettle Moraine Correctional Institution operated by the Wisconsin Department of Corrections. On April 10, 1998, Mr. Dye was placed in a temporary lockup cell pending an investigation of an alleged disciplinary violation. At approximately

6:00 p.m., a correctional officer attempted to deliver a meal to Mr. Dye and found him laying face down on his bed, apparently asleep. The officer attempted several times to get Mr. Dye's attention, but he did not respond. After Mr. Dye ignored several more orders to respond, a team of corrections officers gathered outside Mr. Dye's cell to ascertain whether he required medical attention. After the team entered his cell, Mr. Dye opened his eyes but failed to respond to the officers' orders to place his hands behind his back. For safety reasons the team removed Mr. Dye's jumpsuit and restrained his hands and legs. A nurse who examined Mr. Dye found no health problems. He was then taken to an observation cell, where he was strip-searched for his and the guards' safety. Mr. Dye became combative after the team removed his restraints, and he was again forcibly restrained. Mr. Dye's restraints were removed after he calmed down and he was left in the observation cell without any clothes, although he was given a blanket to cover himself.

The following day a corrections officer observed that Mr. Dye, who was lying on his concrete safety bed completely covered with the blanket, appeared to be banging his head on the concrete bed. Several of the defendants ordered Mr. Dye to stop banging his head, uncover himself, and tell an officer what was wrong, but he ignored the commands. Mr. Dye was informed that a cell extraction team would enter if he did not cooperate, and when he did not, a team entered the cell. Mr. Dye disobeyed the team's orders to put his hands behind his back for handcuffing, and the team then used a stun gun on Mr. Dye's thigh (for two or three seconds) to get him to comply. Mr. Dye was then restrained until he calmed down, and the team left the cell. Mr. Dye alleges that, because of the force used by the officers during the two cell entries, he suffered a cut on his ankle and a sore back.

Following the cell entry, a nurse was dispatched to examine Mr. Dye. He refused an examination, claiming that he wanted to see a doctor. When the nurse informed Mr. Dye that she would examine him and report her findings to a doctor, he told her to "Get the hell away from [his] door" and that he did not "need a fucking nurse." Aff. of Deborah Palm, R.83, ¶ 6. The nurse left, but returned the next day to inquire whether he wanted to be examined at that time. Mr. Dye replied, "Fuck no." Aff. of Deborah Palm, R.83, ¶ 8.

Additionally, while Mr. Dye was confined in the observation cell, he asked a correctional officer for toilet paper on two occasions over two or three days. The officer refused his requests at that time, but he later did receive toilet paper for his cell.

Mr. Dye filed suit against the defendants in the Eastern District of Wisconsin in August 1998, alleging that their actions had violated his Eighth Amendment rights. The district court granted summary judgment to the defendants, concluding that they had not used excessive force, that Mr. Dye had been offered but rejected examinations by a nurse and that his remaining claims failed to allege constitutional violations. Mr. Dye then filed a timely notice of appeal in this Court. We review the district court's grant of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to Mr. Dye. *Outlaw v. Newkirk*, 259 F.3d 833, 836 (7th Cir.2001). Summary judgment is appropriate only if there is no genuine issue to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*; Fed.R.Civ.P. 56(c).

Mr. Dye first asserts that the district court erroneously determined that

the defendants did not use excessive force in violation of the Eighth Amendment when they physically and mechanically restrained him and used a stun gun against him during the two cell entries. To determine whether prison officials used excessive force against an inmate, we must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Whitley v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). In order to survive a motion for summary judgment, a prisoner alleging that he was subjected to cruel and unusual punishment must bring forth evidence that "will support a reliable inference of wantonness in the infliction of pain." *See Whitley,* 475 U.S. at 322. Mr. Dye has failed to do so here. The defendants proffered evidence that they used force against Mr. Dye only because he was struggling with them and they needed to restrain him so that he would not injure them or himself. The defendants also provided evidence that they were acting under an order that they use only the amount of force necessary to restrain Mr. Dye and to maintain order. Mr. Dye did not present any evidence showing (or from which it could be inferred) that the defendants restrained him and used the stun gun merely to inflict pain upon him, and he therefore failed to establish that the defendants used excessive force.

■ Mr. Dye also argues that the district court erred by finding that he was not denied medical care in violation of the Eighth Amendment. In order to demonstrate that a lack of medical care constitutes cruel and unusual punishment, a prisoner must show that prison officials showed "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429

U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference to a serious medical need contains both a subjective and an objective element. First, the prisoner must show that he has an objectively serious medical need. *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001) (per curiam). Second, the prison official must have acted with a "sufficiently culpable state of mind," *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); that is, he must have been aware of the prisoner's medical need and disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety. *Wynn,* 251 F.3d at 593. But Mr. Dye failed to demonstrate that he suffered from an objectively serious medical need. Such a medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* Here Mr. Dye alleged that he suffered back pain and a cut on his ankle from the cell entry teams' actions; however, he failed to submit any evidence that either of these injuries was serious or that the defendants should have known they were serious. Additionally, the defendants did offer Mr. Dye the opportunity to be examined by a nurse, but he refused. Because the defendants offered Mr. Dye medical care and he declined it, they cannot be said to have been deliberately indifferent to his health care needs.

■ Mr. Dye also asserts that the district court erred in finding that the defendants' failure to provide him with toilet paper did not rise to the level of a constitutional violation. But as the district court stated, this court has held in more egregious circumstances that a prisoner's Eighth Amendment rights were not violated when he was not supplied with toilet paper for a short period of time. *See*

*Harris v. Fleming,* 839 F.2d 1232, 1234–36 (7th Cir.1988) (lack of toilet paper for five days not cruel and unusual punishment). Additionally, Mr. Dye has presented no proof that the defendants deprived him of toilet paper to unnecessarily and wantonly inflict pain upon him.

Mr. Dye last argues that the district court erred by finding that the defendants' strip-searching him in front of female employees did not constitute cruel and unusual punishment. But this court has held that cross-sex monitoring of prisoners does not constitute cruel and unusual punishment under the Eighth Amendment. *Johnson v. Phelan,* 69 F.3d 144, 150–51 (7th Cir.1995).

Accordingly, for the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED