In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1375

VERNON A. HENDRICKSON,

*Plaintiff-Appellee,*

*v.*

SCOTT COOPER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 05 C 268—**Larry J. McKinney**, *Judge.*

ARGUED SEPTEMBER 10, 2009—DECIDED DECEMBER 21, 2009

Before MANION, SYKES, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Prison is rough. Violent prisoners can pose a serious threat, requiring prison officers to use force to maintain order. Sometimes, though, the only real threat comes from a rogue officer who attacks a prisoner for no good reason. When such abuse occurs in a facility operated by a State, the prisoner can sue the officer under the civil rights statute, 42 U.S.C. § 1983, for excessive force. Still, a § 1983 suit is not always a perfect

remedy, as the prisoner faces many challenges in proving his case. He must pit his story against the conflicting story of the defendant officer, who often boasts an impressive law enforcement résumé and calls a cadre of fellow officers to support his side. Yet this case proves that these challenges are not insurmountable, and that § 1983 plays a pivotal role in the cause against prison brutality.

Vernon Hendrickson, an inmate at Indiana's Wabash Valley Correctional Facility, brought a § 1983 action against Sergeant Scott Cooper, an officer at the facility, claiming that Cooper attacked him without justification. The case went to trial before a jury, which found Cooper liable for using excessive force against Hendrickson in violation of the Eighth Amendment's ban on cruel and unusual punishment, awarding both compensatory and punitive damages. Cooper appeals, arguing that the jury's liability finding and damages awards were unsupported by the evidence. We recount that evidence in the light most favorable to the jury's verdict. *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 920, 926 (7th Cir. 2004).

On April 21, 2005, Hendrickson was walking back from the prison's dining hall to his housing unit. He passed Cooper, who, for no apparent reason, called him a "son of a bitch." Hendrickson stayed quiet and kept walking. Cooper persisted. "Mother fucker" was Cooper's next insult at Hendrickson. Hendrickson, no longer able to bite his tongue, turned back toward Cooper and told him to "keep his mother off the streets."

Hendrickson's verbal insult was unaccompanied by any physical aggression. Hendrickson, along with two of his fellow inmates who witnessed the encounter, testified that he never made any threatening movements towards Cooper. Indeed, Hendrickson was hardly capable of challenging Cooper physically, as two prior car accidents rendered Hendrickson partially crippled. The first accident damaged the right side of Hendrickson's brain along with the left side of his body, affecting his ability to walk. The second resulted in a herniated disk in Hendrickson's neck. These injuries left Hendrickson with serious pain in his neck and upper back, as well as some pain in his lower back.

So while Hendrickson was never any physical threat, his insult gave Cooper all the excuse he needed. "You son of a bitch, you've had it now," Cooper threatened as he walked into the housing unit ahead of Hendrickson. After stalling for a few minutes, Hendrickson entered the building, only to find Cooper there waiting for him. Hendrickson tried to avoid eye contact and quietly walk to his room, but Cooper was honed in. "Now, bitch," Cooper demanded as he threw his equipment belt out of the way, grabbed Hendrickson, threw him against a wall, slammed him onto the concrete floor, and pressed his knees into Hendrickson's back while another officer cuffed Hendrickson.

Hendrickson testified that all of that "hurt pretty bad," especially in light of his preexisting back and neck problems. After Cooper's attack, officers took Hendrickson to a segregation unit, where he initially refused a nurse's

offer to examine him because he was agitated and didn't want to deal with prison officials. After about an hour, however, Hendrickson told a nurse that he was feeling "pain all over" and requested treatment. About a month later, Hendrickson followed up with multiple requests for a transfer to a hospital for an MRI scan and additional care, as the Tylenol and ibuprofen that he was receiving in prison were not providing sufficient pain relief. Hendrickson also described for the jury how Cooper's attack increased his back pain. Before Cooper's assault, Hendrickson had a "little bit of lower back pain," but this pain became much worse afterwards.

The jury found Cooper liable for using excessive force against Hendrickson, in violation of his Eighth Amendment rights. The jury awarded Hendrickson $75,000 in compensatory damages for pain and suffering and tacked on a punitive damages award of $125,000. The district court denied Cooper's motion under Fed. R. Civ. P. 50 for judgment as a matter of law or a new trial. Cooper appeals, arguing that the jury's liability finding was unsupported by the evidence and that the damages awards were excessive.

Beginning with Cooper's attack on the jury's liability finding, Cooper faces an uphill battle, for we will overturn a jury verdict only if "no legally sufficient evidentiary basis" exists "for a reasonable jury to find for the non-moving party." *Woodward*, 368 F.3d at 926 (quotation omitted). To determine if this verdict was supported by sufficient evidence, we must consider what Hendrickson had to prove to make out his Eighth

Amendment excessive force claim. The core requirement for such a claim is that Cooper used force not "in a good-faith effort to maintain or restore discipline," but "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including "the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quotation omitted). Even if an officer's use of force serves no good-faith disciplinary purpose, the force may be so "*de minimis*" that it does not violate the Eighth Amendment. *Hudson*, 503 U.S. at 10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Still, while de minimis uses of force are non-actionable, a prisoner need not suffer "serious injury" in order to bring an Eighth Amendment claim. *Id.* at 4.

The evidence in this case amply supports the jury's verdict that Cooper attacked Hendrickson for the malicious purpose of causing harm. Hendrickson and his fellow inmates testified that he made no threatening movements towards Cooper, or anyone else, but simply responded to Cooper's repeated cussings with an insult of his own. Accepting Hendrickson's version of events, as we must, Cooper did not reasonably perceive any threat from Hendrickson and had no need to use any force. Nevertheless, Cooper waited for Hendrickson to enter the housing unit and then grabbed him, slammed

him into the wall and concrete floor, and pressed his knees into Hendrickson's bad back. The jury could reasonably find that this use of force was gratuitous and intended solely to cause pain. (It is interesting that although Hendrickson's testimony was corroborated by two other inmates, none of the other correctional officers present during the events provided any evidence at trial.)

Cooper's attack was also not the type of de minimis force that cannot, as a matter of law, constitute an Eighth Amendment violation. Cooper offered more than a mere "malevolent touch," *Hudson*, 503 U.S. at 9, or "simple act of shoving," *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000). Cooper took Hendrickson to the concrete ground and kneed him in the back. This force was severe and, though perhaps justified under other circumstances to restrain a dangerous inmate, uncalled-for here. *Cf. Lewis v. Downey*, 581 F.3d 467, 475-76 (7th Cir. 2009) (finding that the use of a taser gun was a more than de minimis use of force, triggering the inquiry of whether the tasering served a legitimate disciplinary purpose). Hendrickson was no threat, yet Cooper attacked him for the malicious purpose of causing pain. Or so the jury could reasonably find.

Cooper argues that Hendrickson failed to prove that the attack caused any injury severe enough to violate the Eighth Amendment, stressing that Hendrickson offered no expert medical evidence showing that the attack exacerbated his preexisting back pain. This argument assigns to Hendrickson a burden that he did not have,

namely, proof that he suffered any serious injury or long-term pain. It is "pain, not injury," that is the touchstone of an Eighth Amendment claim. *Id.* at 475. Hendrickson testified that he felt a lot of pain when Cooper threw him to the ground. It got worse when Cooper gave him the knee treatment, causing what Hendrickson described as a sharp, needle-like pain in his lower back. Hendrickson's testimony about the pain that he suffered from the assault, if believed by the jury, was enough to show an Eighth Amendment violation. The jury was not required to find that Hendrickson suffered a more debilitating, longer-term injury.

True, if an officer's use of force causes only minor injury, that factor tends to show that the force served a proper disciplinary purpose. *See Outlaw*, 259 F.3d at 837. So in cases where it's debatable whether the use of force was legitimate or malicious, the lack of serious injury may tip the scales against the prisoner. *See id.* at 839 (relying in part on the minor nature of the inmate's injuries to conclude that the officer's use of force served a legitimate security objective); *Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994) ("This type of minor injury further supports our conclusion that at most this incident was a *de minimis* use of force not intended to cause pain or injury to the inmate."). The jurors in this case didn't need the extent-of-injury factor to make up their minds; they could rely on other factors such as the lack of any reasonably perceived threat or need for force, *see Outlaw*, 259 F.3d at 837, to find that Cooper acted with malice.

And in any event, Hendrickson did offer evidence that he incurred serious, long-term injury from the attack. He testified that, before the incident, he had a "little bit of lower back pain, but it wasn't nothing like it was after I got slammed on the concrete. . . . There's no comparison." Shortly after the incident, Hendrickson told a nurse that he was experiencing pain throughout his body. A month later, he reported pain in his "lower back" and "insides" and requested a transfer to a hospital for an MRI scan. He followed up with a second request for an MRI, stating that the non-prescription pain medications that he received in prison were ineffective at alleviating his back pain. In yet a third health care request, Hendrickson repeated his complaints of continuous, severe back pain. This evidence allowed the jury to conclude that Cooper's attack caused Hendrickson severe, recurring pain.

We also disagree with Cooper's suggestion that Hendrickson had to support his claims of increased back pain with expert medical evidence. No expert testimony is required to assist jurors in determining the cause of injuries that are within their common experiences or observations. *See United States v. Christian*, 342 F.3d 744, 750 (7th Cir. 2003). Here, the cause of Hendrickson's pain was perfectly clear: Cooper beat him. Had Hendrickson claimed that Cooper never touched him but merely denied him access to medical care for several days, and that this delay in treatment exacerbated his back problems, we might require Hendrickson to support his theory of causation with some objective medical evidence. *See Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007) (concluding that a prisoner's medical

records were sufficient to find that a delay in responding to complaints of chest pain caused unnecessary pain and elevated blood pressure); *Walker v. Peters*, 233 F.3d 494, 502 (7th Cir. 2000) (rejecting an Eighth Amendment claim against prison doctors who refused certain requests for medication on the ground that the prisoner could only speculate that the refusal caused injury). This case presents no such complicated question of medical causation. Hendrickson testified that Cooper beat him up and that it hurt really bad. The jury believed him. No further proof was required for the jury to find Cooper liable for violating Hendrickson's Eighth Amendment rights.

So much for the issue of Cooper's liability; on to damages. The district court refused to grant a new trial based on Cooper's claim that the jury's compensatory and punitive damages awards were excessive, a decision that we review for an abuse of discretion. *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 713 (7th Cir. 2004). As for the $75,000 in compensatory damages awarded to Hendrickson, we consider whether that award is "monstrously excessive" or lacks any rational connection to the evidence. *See Thomas v. Cook County Sheriff's Dep't*, No. 08-2232, 2009 WL 4251079, at *15 (7th Cir. Dec. 1, 2009). We may also compare the award with other compensatory damages awards upheld in similar cases, although such comparisons are rarely dispositive given the fact-specific nature of damages claims. *See Harvey*, 377 F.3d at 714. The required "rational connection" between the evidence and the award does not imply mathematical exactitude, especially where the compensatory

damages are for pain and suffering. Such damages are very difficult to quantify, leaving it to the jury to select a dollar amount that it believes will fairly compensate the plaintiff. *Fenolio v. Smith*, 802 F.2d 256, 259-60 (7th Cir. 1986).

The jury's award of $75,000 was rationally connected to Hendrickson's evidence of pain and suffering. Hendrickson described how much pain Cooper inflicted by throwing him to the ground and kneeing him in the back. Following the attack, Hendrickson continued to feel back pain that was significantly worse than before, prompting several requests for medical treatment. The jury heard this evidence and then received instructions, without objection by Cooper, that properly guided the jurors with the often-used language that is standard in damages instructions. Specifically, the jurors were told that, among other things:

> Compensatory damages can also cover damages that are less specific [than out-of-pocket monetary harm], such as pain and suffering, inconvenience, mental anguish, shock and discomfort, and loss of enjoyment of life.
>
>     . . . .
>
>     . . . No evidence of the dollar value of physical or mental or emotional pain and suffering or disability has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of pain and suffering. You are to determine an amount that will fairly compensate the Plaintiff for the injury he has sustained.

The amount that the jury came up with was $75,000, which was not a monstrously excessive estimate of the pain that Hendrickson experienced, and continues to experience, from his ordeal. A different jury may have chosen a lower number, but this uncertainty is unavoidable when making difficult estimates of pain and suffering.

Additionally, the jury's award of $75,000 for pain and suffering is not out of line with similar awards upheld in the past. *See Reising v. United States*, 60 F.3d 1241, 1244 (7th Cir. 1995) (upholding $150,000 in pain and suffering damages for acceleration of back problems resulting from a car accident); *Hagge v. Bauer*, 827 F.2d 101, 109-10 (7th Cir. 1987) (affirming a compensatory damages award of $75,000, exclusive of medical bills, for pain from a broken leg caused by a police officer's assault). We might have a different case if the jury came back with a compensatory damages award in the millions, or even the $350,000 in total damages requested by Hendrickson's trial counsel. In this case, though, we cannot say that $75,000 was an excessive valuation of Hendrickson's pain and suffering.

Echoing his challenge to the jury's liability finding, Cooper argues that the compensatory damages award is excessive absent objective medical evidence showing that Cooper caused Hendrickson's increase in back pain. Again, we disagree. Given the uniquely subjective nature of pain, *see Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996), it is understandable that Hendrickson relied primarily on his own testimony to prove his pain and suffering. He described how much worse his back felt as

a result of Cooper's assault, and the verdict shows that the jury believed him. At that point, the jury had the duty to fairly compensate Hendrickson, a task that the jury could perform without objective medical evidence attempting to quantify Hendrickson's pain and suffering. *Cf. Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (observing that a prisoner did not need to offer "'objective' evidence of his pain and suffering" in order to recover for prison doctors' deliberate indifference to a serious medical condition).

Satisfied that the $75,000 compensatory damages award is supported by the evidence, we close by considering the $125,000 punitive damages award. Cooper raises no constitutional challenge to the size of the punitive damages award, which we would consider de novo. *Kunz v. DeFelice*, 538 F.3d 667, 678 (7th Cir. 2008). Instead, Cooper simply argues that the award is excessive in light of the evidence, so we review only for an abuse of discretion. *Id.* "We will set aside a jury's award of punitive damages only if we are certain that it exceeds what is necessary to serve the objectives of deterrence and punishment." *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1287 (7th Cir. 1995). As with our review of a compensatory damages award, it is useful to compare the challenged punitive damages award with other awards upheld in the past. *See id.*

We do not find $125,000 excessive. "Punitive damages are appropriate when the defendant acted wantonly and willfully, or was motivated in his actions by ill will or a desire to injure." *Hagge*, 827 F.2d at 110. The jury in this

case heard ample evidence that Cooper acted with the malicious desire to cause Hendrickson harm. It is difficult to determine the exact amount required to deter and punish such misconduct, *see id.*, but we cannot say with certainty that $125,000 is too much.

True, $125,000 is larger than the punitive damages awards that we have upheld in similar, though less recent, excessive force cases. *See Bogan v. Stroud*, 958 F.2d 180, 182, 186 (7th Cir. 1992) ($7000 in total punitive damages against three prison officers who beat and stabbed an inmate after subduing him); *Hagge*, 827 F.2d at 104, 110 ($25,000 against a police officer who kicked an arrestee and broke her leg); *Taliferro v. Augle*, 757 F.2d 157, 159, 162 (7th Cir. 1985) ($25,000 against two police officers who beat an arrestee). More recently, we have upheld awards approaching the $125,000 imposed here, but these cases involved multiple officers who used force that was probably more severe than Cooper's attack. *See Kunz*, 538 F.3d at 671, 679 ($90,000 in total punitive damages where multiple police officers beat an arrestee after he was subdued and, later at the station, beat out a false confession); *Marshall ex rel. Gossens v. Teske*, 284 F.3d 765, 768-69, 772-73 (7th Cir. 2002) ($100,000 against three officers who chased a minor at gunpoint, arrested him, and detained him for several hours without probable cause); *Cooper*, 97 F.3d at 916, 920 ($120,000 against seven prison guards who beat inmates and then refused requests for medical treatment). Drawing comparisons to these cases, perhaps $125,000 approaches the upper end of what was necessary to punish Cooper's lone act of attacking a prisoner for no good reason.

Still, we think that the substantial evidence of malice in this case brings the $125,000 punitive damages award within the bounds of reasonableness. In the distinct but related context of a constitutional challenge to a punitive damages award, the Supreme Court has observed that the most important factor is "the degree of reprehensibility of the defendant's conduct." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (quotation omitted). Cooper's use of force was reprehensible because it was completely unjustified. It was not as though Cooper was initially compelled to use some force against Hendrickson, but the jury found that he simply went too far. *Cf. Kunz*, 538 F.3d at 670-71 (recounting the plaintiff's actions of delivering drugs, driving a stolen vehicle while drunk, and fleeing the police, all of which necessitated the plaintiff's arrest). Cooper's actions were deliberate and calculated to create a violent confrontation with Hendrickson. Cooper goaded Hendrickson into leveling an insult, which Cooper used as an excuse to attack. Cooper then lay in wait for Hendrickson to enter the housing unit. When Hendrickson finally appeared, Cooper grabbed, shoved, floored, and kneed him. Hendrickson's disability made him especially vulnerable to such severe force, increasing the likelihood that Cooper's attack would achieve his purpose of causing pain. *Cf. id.* at 679 (observing that the plaintiff "was shackled and defenseless while he was being punched and thus vulnerable to the injury inflicted"). Cooper also perpetrated this attack right in the presence of other inmates, as if Cooper intended to vividly demonstrate who was the boss. The

jury could find that $125,000 was necessary to punish and deter this malicious use of force.

The evidence supported the jury's finding that Cooper violated Hendrickson's Eighth Amendment rights, as well as the jury's compensatory and punitive damages awards.[*]

AFFIRMED.

---

[*] It should be noted that Hendrickson proceeded pro se through the early stages of this case, including the summary judgment process, right up to the brink of trial. At that point, the district judge requested that counsel appear on Hendrickson's behalf pursuant to 28 U.S.C. § 1915(e)(1). The law firm that complied with that request very ably represented Hendrickson through trial and this appeal, thereby upholding the longstanding and greatly appreciated tradition of volunteering to represent the indigent.