NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 13, 2017[*]
Decided February 15, 2017

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-3772

| | |
|---|---|
| ALLEN N. CAFFEY,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 3:13-CV-322-NJR-DGW |
| LUCAS MAUE, *et al.,*<br>    *Defendants-Appellees.* | Nancy J. Rosenstengel,<br>*Judge.* |

**O R D E R**

Allen Caffey, an Illinois inmate, contends in this suit under 42 U.S.C. § 1983 that guards violated the First Amendment by punishing him for engaging in protected speech and also violated the Eighth Amendment by using excessive force and refusing medical care for a resulting head injury. The district court granted summary judgment for the guards on all claims, reasoning that Caffey lacks evidence he was punished because of his speech, that the guards used only de minimis force, and that Caffey's head injury was not serious or ignored. Caffey has appealed, and although we agree with him

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

that his claim of excessive force must be remanded for trial as to one defendant, we otherwise affirm the judgment.

Much of the evidence at summary judgment is disputed, and to the extent that disagreements between the parties exist, we recount the facts in the light most favorable to Caffey, the opponent of summary judgment. *See Carson v. ALL Erection & Crane Rental Corp.*, 811 F.3d 993, 994 (7th Cir. 2016). Caffey worked as a janitor at Menard Correctional Center and was on duty in the law library when another inmate in the library assaulted a guard. Investigators suspected that the attack was gang related and interviewed dozens of prisoners, including Caffey. Two of the defendants, Chad Hasemeyer and Sean Henry, interviewed Caffey (the defendants dispute that they participated in this interview, but we accept Caffey's version). Hasemeyer and Henry warned Caffey that he would be isolated from the general population—as authorized by a third defendant, Major Richard Moore—if he refused to divulge what he knew. Caffey refused to talk and, during the interview, called his interrogators "unprofessional" for threatening him. After the interview Hasemeyer and Henry recommended placing Caffey in investigative segregation. Major Moore agreed, and Caffey was segregated for 30 days.

Upon his release from segregation, Caffey was told he was being transferred to Pontiac Correctional Center. Guard Lucas Maue, a fourth defendant, cuffed Caffey's hands and made him walk with his head down to a waiting bus. While descending a stairway, Caffey lost his shoes, became unsteady, and leaned against the handrail while asking Maue to slow down and hold him upright. Maue instead struck him on the head with a wooden stick and asked if he wanted to be hit again. Caffey has an affidavit from another inmate who says he saw Maue strike Caffey without provocation.

As Caffey reached the bus, he heard men yelling for a doctor and joined in, shouting that he needed a doctor because his "head hurt." Todd Scott, a fifth defendant who was guarding the inmates on the bus, was in earshot of Caffey, but instead of calling for medical attention, he readied Caffey for transport by grabbing his head, pressing it against a window, and shackling his feet. Caffey complained that one of the shackles was too tight and hurting his ankle. He also repeated that his head injury required treatment, but Scott told him to "shut up." Caffey did not have a visible wound, but by his account, he was experiencing ringing in his head, pressure around his eyes and face, and sharp pain every three minutes. The shackles were removed from his legs upon reaching Pontiac, leaving only an imprint on Caffey's skin that went away after a few hours.

Caffey's property was transported to Pontiac separately, and Mary Richard, the last of the six defendants, processed it 20 days after receipt. When Caffey received his possessions, he discovered that an item of jewelry was missing and other property was damaged. Richard, who disclaims prior knowledge of Caffey's accusations against Menard staff, attributes the processing delay to a backlog of items to inventory and insists that she released Caffey's property in the same condition it was received.

Caffey claims that (1) Hasemeyer, Henry, Moore, and Richard violated the First Amendment by sending him to segregation, initiating his transfer to Pontiac, and converting and damaging his property because he refused to cooperate in their investigation and called Hasemeyer and Henry unprofessional; (2) Maue and Scott violated the Eighth Amendment by gratuitously striking him and pressing his head against the bus window; and (3) Scott violated the Eighth Amendment by refusing medical care for his head injury. The defendants moved for summary judgment on all but the claims of excessive force against Maue and Scott. On the First Amendment claim, the defendants argued that Caffey did not engage in protected speech by refusing to cooperate or by calling Hasemeyer and Henry unprofessional, and thus he did not suffer an actionable deprivation.

The district court concluded that both actions *were* protected but reasoned that Caffey could not prevail on his First Amendment claim because the defendants had given an unrebutted explanation for placing him in segregation that has nothing to do with his speech, he lacks evidence that any defendant was personally involved in the decision to move him to Pontiac, and he cannot establish that Richard knew about the events at Menard when she processed his incoming property at Pontiac. The claim of deliberate indifference also warranted summary judgment, the court continued, because in a deposition Caffey had said he felt only a "little pain," which even if objectively serious, had not been ignored by Scott, who anticipated that Caffey would see medical personnel upon arriving at Pontiac. And, finally, as to Caffey's allegations of excessive force, the court notified Caffey that it would enter summary judgment sua sponte unless he offered evidence that Maue and Scott had acted maliciously and used more than de minimis force. *See* FED. R. CIV. P. 56(f); *Ellis v. DHL Exp. Inc. (USA)*, 633 F.3d 522, 529 (7th Cir. 2011) (permitting the district court to enter summary judgment on its own after notice and reasonable time to respond). Caffey's response did not satisfy the judge.

On appeal[1] Caffey argues that all of his claims should have survived summary judgment, so we start with the First Amendment. To prevail on that claim, Caffey needed evidence that he was penalized for engaging in protected speech. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015); *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). The district court thought that Caffey had engaged in protected speech when he refused to help Hasemeyer and Henry investigate the law-library assault and also when he called them "unprofessional." We disagree that this speech was protected, and that's reason enough to uphold the dismissal of Caffey's First Amendment claim.

Prison administrators often use the "stick" of withholding amenities and privileges to facilitate cooperation with their goals. *See United States v. Boyd*, 608 F.3d 331, 334 (7th Cir. 2010) (discussing federal Inmate Financial Responsibility Program). More importantly, prisoners may be compelled to disclose information during internal investigations provided they are not punished for refusing to make self-incriminating statements without immunity. *Riggins v. Walter*, 279 F.3d 422, 430 (7th Cir. 2001). Caffey never hinted that answering the investigators' questions might incriminate him, so he was not privileged to refuse.

Neither was his name-calling protected speech. Inmates retain a First Amendment right to complain about prison staff, whether orally or in writing, but only in ways consistent with their status as prisoners. *See Turner v. Safley*, 482 U.S. 78, 89–90 (1987); *Watkins v. Kasper*, 599 F.3d 791, 796–97 (7th Cir. 2010); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006); *Simpson v. Nickel*, 450 F.3d 303, 307 (7th Cir. 2006). Insubordinate, verbal remarks to prison staff are inconsistent with the status of a prisoner, *see Kervin v. Barnes*, 787 F.3d 833, 834 (7th Cir. 2015) (concluding that a prisoner engaged in unprotected backtalk by insisting on speaking with a lawyer after the guard had said "no"); *Lockett v. Suardini,* 526 F.3d 866, 874 (6th Cir. 2008) (calling a hearing officer "foul and corrupted bitch" was not protected speech because the remark was "insulting, derogatory, and questioned her authority"); *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 858, 864 (5th Cir. 2004) (concluding that an inmate who during a religious

---

[1] The defendants contend that Caffey's notice of appeal was untimely because it was not received by the clerk of the district court until four days after the due date. Caffey tendered to this court a declaration averring that he placed his notice of appeal, with prepaid postage, in a prison mail system before the deadline expired. He thus was entitled to the benefit of the prison mailbox rule, and his notice of appeal was timely. *See* FED. R. APP. P. 4(c)(1); *Ford v. Wilson*, 747 F.3d 944, 948 (7th Cir. 2014); *Hurlow v. United States*, 726 F.3d 958, 962–64 (7th Cir. 2013).

service accused a chaplain of theological errors had engaged in an unprotected challenge to institutional authority). Caffey called the guards unprofessional for warning him that his uncooperative attitude could cost him privileges. He made his comment directly to Hasemeyer and Henry during a security interview, outside the prison's grievance process, which Caffey eventually used without repercussion. His statement wasn't an attempt to complain to a supervisor; it was directed at the guards as a challenge to their authority.

We next turn to Caffey's contention that he established a triable issue on his claim of deliberate indifference against Scott. According to Caffey, he conveyed to Scott that he was in pain, yet Scott brushed him off. To establish a triable issue, Caffey needed evidence that he suffered an objectively serious medical need and that Scott was deliberately indifferent to that condition. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Since Caffey had just been struck on the head and was experiencing pressure, ringing, and sharp, recurring pain, we can assume for purposes here that he suffered from an objectively serious medical condition. *See Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 941 (7th Cir. 2015) (noting that pain can be an objectively serious medical condition); *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008) (same). But Caffey did not present evidence from which to infer that Scott actually comprehended the extent of his pain and consciously disregarded the risk it posed. *See Farmer*, 511 U.S. at 837; *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). Caffey testified that once he got onto the bus, he shouted—in concert with other men yelling for treatment—that he needed a doctor because his head was hurt and that he directly asked Scott for a doctor. Caffey did not tell Scott, however, about the nature or extent of his head injury. *See Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (concluding that a prisoner's vague statements were inadequate to put guards on notice of risk of harm). Scott did not know that Maue had struck Caffey, whose head injury was not visually apparent. Because Scott did not know the extent of Caffey's injury, ignoring his request for a doctor did not constitute deliberate indifference.

That leaves the claims of excessive force against Scott and Maue. To establish a triable issue, Caffey had to present evidence that the defendants applied force maliciously and sadistically to cause harm rather than in a good-faith attempt to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012). Factors relevant to a defendant's mental state include the need for force, the amount of force used, the threat reasonably perceived by officers, efforts made to temper severity of the force, and the extent of injuries caused by the force. *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *Rice*, 675 F.3d

at 668. In this case no reasonable trier of fact could conclude that Scott used excessive force by pressing Caffey's head against the bus window while shackling his legs. Some force is necessary in placing a prisoner in restraints, *see Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994), and Caffey offered nothing suggesting that the force Scott used was unnecessary or that it was applied for the purpose of causing harm.

The evidence against Maue, on the other hand, is sufficient to require a trial. The district court concluded—and Maue does not dispute—that a jury could find from the evidence that he deliberately used "unnecessary" force. Yet, the court reasoned, the force used was de minimis and Caffey's injury "quite minor," so gratuitously striking him in the head with a stick did not violate the Eighth Amendment.

That reasoning is incorrect. A "prisoner need not show a 'significant injury' in order to have a good claim under the [E]ighth [A]mendment, if a guard inflicted pain maliciously or sadistically." *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012) (citing *Hudson*, 503 U.S. at 7). A blow to the head with a wooden weapon cannot be characterized as a mere offensive touch, and the degree of injury would have been relevant only if Maue could have thought the force he used was necessary to keep Caffey under control. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010); *Hendrickson v. Cooper*, 589 F.3d 887, 891 (7th Cir. 2009); *Outlaw v. Newkirk*, 259 F.3d 833, 840 (7th Cir. 2001). But Maue did not offer any evidence that Caffey posed a security threat when he struck him, and on this record a jury could find that his use of force was malicious. This claim must be tried to a jury.

The district court's judgment in favor of Lucas Maue on Caffey's claim of excessive force is VACATED, and that claim is REMANDED for further proceedings. In all other respects, the judgment is AFFIRMED.